David ADAMSON, et al., Plaintiffs,

v.

CITY OF PROVO, UTAH,
et al., Defendants.

No. 91–C–546A.

United States District Court,
D. Utah, C.D.

March 22, 1993.

936

Michael P. Zaccheo, Nathan R. Hyde, Richards, Brandt, Miller & Nelson, Salt Lake City, UT, for plaintiffs.

Fred D. Howard, Linda J. Barclay, Howard, Lewis & Petersen, Provo, UT, for defendants.

## MEMORANDUM DECISION AND ORDER

ALDON J. ANDERSON, Senior District Judge.

### INTRODUCTION

The court heard the defendants' Motion for Summary Judgment on February 19,

1993. This dispute involves the payment of employer contributions by the defendant, Provo City, on the plaintiffs' overtime compensation to the plaintiffs' retirement program. In their Complaint, the plaintiffs assert state law violations, as well as a claim under 42 U.S.C. § 1983 on the grounds that Provo City denied them "equal" employer retirement contributions as required by a Provo City Ordinance. The defendants, Provo City and several Provo City employees, moved for summary judgment against the plaintiffs.

## FACTUAL BACKGROUND

The plaintiffs in this dispute are current and former Provo City police officers who enrolled in the Public Safety Retirement System (Plaintiffs). The Plaintiffs voluntarily selected to participate in the Public Safety Retirement System (PSRS), as opposed to other available retirement systems, because the PSRS benefits suited their particular needs. The retirement programs used by Provo employees, including the PSRS, are governed by state law. *See* Utah Code Ann. §§ 49–1–101 to 49–9–408 (1992). The various retirement systems require different contributions from the city and pay the beneficiaries different allowances. *See* Pl's Mem. in Supp. of Pl's Mot. for Summ. J., Exhibit 4.

This dispute arises from a Provo City Ordinance, enacted in 1985, which requires that:

Total employer contributions by Provo City for employee retirement programs, including, but not limited to, FICA and state or other retirement programs, which are in excess of the amounts described in the Pay Range Table, *shall be equal in amount* for all employees at the same Grade and Step on the Pay Range Table. This section shall apply to all full-time regular employees of the City. The Administration shall adjust payments made by the City and the withholding of funds for employees as necessary to accomplish the objectives of this section. This section shall not govern contributions for workers compensation, unemployment compensation, health or life insurance, or other non-retirement benefits.

Provo City, Utah Ordinance § 4.04–1.040 (1992) (emphasis added).

During 1985 and 1986, the defendants (collectively "Provo" or "Provo City") attempted to pay retirement contributions for overtime work by the Plaintiffs. However, the PSRS rejected Provo City's contributions and returned the payments to the city. In fact, the PSRS accepts employer contributions only based on the Plaintiffs' "base pay" as determined by the PSRS's terms. In fact, the PSRS's terms exclude employer contributions for overtime or bonus pay. Provo City ceased attempts to pay employer contributions for overtime for the Plaintiffs enrolled in the PSRS after 1986. Currently, Provo City pays overtime employer contributions for other municipal employees enrolled in the contributory program of the Utah State Retirement System. However, Provo City has never paid employer contributions on any bonus pay for any employee.[1]

Mary Taylor, the Provo City employee assigned the duty of paying employer retirement contributions, stated that Provo City acquiesced to the PSRS's refusal to accept overtime payments. *See* Pl's Mem. in Opp'n to Def's Mot. for Summ. J., Exhibit 3. From the evidence submitted by the parties, it is unclear whether Provo City engaged in an independent decision-making process to assess the propriety of not making employer contributions for overtime for the Plaintiffs. In other words, Provo City may, or may not, have made specific determinations regarding the propriety of paying overtime contributions beyond the PSRS's refusal to accept those contributions.

In compliance with the Utah Governmental Immunity Act, Plaintiffs filed a notice of

---

1. Provo City has submitted uncontroverted evidence that it has never paid employer contributions on "bonus" pay for any municipal employee. Pursuant to the Rules of Practice for the District of Utah, "[a]ll material facts ... which are set forth with particularity in the statement of the movant, shall be deemed admitted for the purpose of summary judgment, unless specifically controverted by the statement of the opposing party identifying material facts of record." D.Utah R. 202(b)(4). This court accepts as fact, therefore, that Provo City has not paid contributions on bonus pay for any municipal employee.

claim with Provo City on November 30, 1990. *See* Utah Code Ann. § 63–30–13 (1991). Provo City rejected Plaintiffs' claim pursuant to Utah Code Ann. § 63–30–14 (1991). Subsequently, following an investigation, Plaintiffs filed this action on May 29, 1991,[2] within one year after Provo City rejected the claim. *See* Utah Code Ann. § 78–12–30 (1992).

Plaintiffs assert that they became aware of the "discrepancy" in Provo's payment of retirement contributions in December of 1989. *See* Pl's Mem. in Opp'n to Def's Mot. for Summ. J., Aff. of Mark West, ¶ 5. In fact, Plaintiffs have been aware of Provo's employer contributions since at least 1985. Specifically, Plaintiffs received a bi-monthly "pay stub," as well as semi-annual retirement interest statements, which showed relevant employer contributions to the PSRS during their employment with the police department. *See* Def's Mem. in Supp. of Def's Mot. for Summ. J., Aff. of Mary Taylor, ¶ 6. Additionally, the terms of the different retirement programs were available to the Plaintiffs through publicly disseminated brochures.

## LEGAL DISCUSSION

In their Complaint, Plaintiffs assert state law violations as well as a federal claim under 42 U.S.C. § 1983 based upon Provo City's alleged failure to pay "equal" retirement contributions to the Plaintiffs enrolled in the PSRS. In response, Provo City filed this Motion for Summary Judgment. Provo City asserts several procedural and substantive bars to the Plaintiffs' claims. Specifically, Provo City argues that (1) Plaintiffs' section 1983 claim and state law claim are partially barred by the applicable statutes of limitation; (2) Plaintiffs fail to allege any constitutional violations that would entitle them to section 1983 relief; (3) Plaintiffs' state law claims should be barred by governmental immunity; and (4) Plaintiffs failed to file an undertaking required by Utah law when commencing an action against a governmen-

tal entity. This court will address each of these issues separately.

## I. Statutes of Limitation

### A. Application of the "Discovery Rule"

Before considering the relevant limitation periods' effect on Plaintiffs' claims, this court must address Plaintiffs' assertion that the "discovery rule" applies to their claims. Pursuant to the Utah Governmental Immunity Act, Plaintiffs filed a notice of claim with Provo City on November 30, 1990. *See* Utah Code Ann. § 63–30–13 (1991). Provo City rejected Plaintiffs' claim in compliance with Utah Code section 63–30–14.[3] Subsequently, Plaintiffs properly filed this action on May 29, 1991, within one year after Provo City rejected the claim. *See* Utah Code Ann. § 78–12–30 (1992). Section 78–12–30 provides a one-year limitations period for Plaintiffs' state law claim for negligence. *Id.*

▉ Under Utah law, a cause of action accrues upon the happening of the last event necessary to complete the cause of action. *Becton Dickinson & Co. v. Reese*, 668 P.2d 1254, 1257 (Utah 1983). Provo City contends that Plaintiffs' claims accrued on a bi-monthly basis because each failure of Provo City to contribute provided the Plaintiffs with a cause of action.[4] Thus, Plaintiffs should be permitted to pursue only those claims accruing within the one-year period preceding the notice of claim on November 30, 1990. Likewise, Provo argues that Utah's two-year limitations period bars all of Plaintiffs' claims under 42 U.S.C. § 1983 arising prior to two years before this action was filed. *See* Utah Code Ann. § 78–12–28(3) (1992).

In response, Plaintiffs contend that, because they were unaware that other Provo employees received employer contributions on overtime pay, they could not have known that Provo had violated the Ordinance. Plaintiffs argue that they were unaware of the disparity in Provo City's contributions for

---

2. Plaintiffs delivered the Complaint to the Clerk of Court on May 23, 1991. The filing fee, however, was paid on May 29, 1991.

3. *See* Utah Code Ann. § 63–30–14 (1991).

4. Provo argues that Plaintiffs' claims accrued on a bi-monthly basis because, during each pay period, Plaintiffs received a "pay stub" which showed relevant employer contributions to the PSRS.

overtime until December of 1989. *See* Pl's Mem. in Opp'n to Def's Mot. for Summ. J., Exhibit 2 (Aff. of Mark West). Under Plaintiffs' argument, Plaintiffs' causes of action would not accrue until December of 1989.

■ It is clear, however, that "mere ignorance of the existence of a cause of action does not prevent the running of the limitations period." *Canadian Indem. Co. v. K & T, Inc.,* 745 F.Supp. 661, 664 (D.Utah 1990) (citing *Becton Dickinson,* 668 P.2d at 1257). To temper the application of this rule, the Utah Supreme Court has recognized several exceptions to the general principle that a cause of action accrues upon the happening of the last event necessary to complete the cause of action. *Id.* The court has found several particular exceptions.

> In some areas of the law, the discovery rule is incorporated into the statute whereby the statute does not begin to run until the facts forming the basis for the cause of action are discovered. In other circumstances, concealment or misleading by a party prevents that party from relying on the statute of limitations. Finally, where there are exceptional circumstances that would make application of the general rule irrational or unjust, this Court has adopted the discovery rule by judicial action.

*Id.* (citing *Becton Dickinson,* 668 P.2d at 1257).

■ From the facts presented in this case, none of these exceptions apply to Plaintiffs' claims. First, the applicable statutes of limitation lack any reference to circumstances under which the limitations period should be tolled. Second, the Plaintiffs have offered no evidence that Provo City concealed or misled the Plaintiffs regarding the payment of employer contributions for overtime. Thus, neither of these exceptions applies to Plaintiffs' claims.

Finally, no "exceptional circumstances" exist which would make the application of the general rule "irrational" or "unjust." To determine whether exceptional circumstances exist, this court must balance "the hardship the statute of limitations would impose on the plaintiff" against "any prejudice to the defendant from difficulties of proof caused by the passage of time." *Klinger v. Kightly,* 791 P.2d 868, 872 (Utah 1990) (citing *Myers v. McDonald,* 635 P.2d 84, 86 (Utah 1981)).

In *Klinger,* the Utah Supreme Court applied the balancing test to a negligence claim brought by property vendors against a land surveyor. *Id.* 791 P.2d at 869. The court found that, with respect to prejudice against the defendants, the plaintiffs' claim was not so distant in time as to prevent the defendant from producing evidence in his defense. *Id.* By contrast, if the discovery rule was not applied, the plaintiffs' claim would be completely barred by the statute of limitation. *Id.* The *Klinger* court applied the discovery to permit the plaintiffs to proceed with their action. *Id.*

■ Unlike *Klinger,* the Plaintiffs' claims against Provo City will not be completely barred if the discovery rule is not applied. In fact, the Plaintiffs' claims would be partially barred only in the amount of damages recoverable. Moreover, Plaintiffs have had access to documents and information that provided the factual grounds for their claims since Provo ceased paying overtime contributions. *See* Def's Mem. in Supp. of Mot. for Summ. J., Exhibit 5, Aff. of Mary Taylor, ¶ 6.; *see, e.g., Becton Dickinson,* 668 P.2d at 1257 (rejecting "exceptional circumstances" rationale when plaintiff could have discovered factual basis of claim with "due diligence"). Because Plaintiffs suffered no significant prejudice, this court declines to apply the discovery rule to Plaintiffs' claims. Thus, it is necessary to ascertain the applicable limitations periods to Plaintiffs' federal and state claims.

### B. Statute of Limitations for 42 U.S.C. § 1983

Initially, this court is faced with the question of which statute of limitation should be applied to Plaintiffs' claims under 42 U.S.C. § 1983 (1988). Provo City asserts that Utah Code section 78–12–28(3)[5] provides an explicit two-year limitations period for section 1983 claims in Utah. Under that statute, Plaintiffs' claims accruing prior to May 24,

---

**5.** Utah Code Ann. § 78–12–28(3) (1992).

1989 would be barred. In response, the Plaintiffs contest the validity of section 78–12–28(3).

### 1. Background to Statutes of Limitation and Section 1983

The Reconstruction Civil Rights Acts [6] provide private individuals with a civil cause of action for deprivation of rights secured by the United States Constitution. Within that Act, section 1983 affords an individual a civil claim against any "person" who deprives the litigant of any constitutionally guaranteed right under color of state law. 42 U.S.C. 1983 (1988).[7] Congress, however, failed to include any statute of limitations for claims brought under the Act. *O'Sullivan v. Felix,* 233 U.S. 318, 322–23, 34 S.Ct. 596, 597–98, 58 L.Ed. 980 (1914). Instead, Congress implicitly allowed the states to establish time limitations that were not "inconsistent with federal law or policy." *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985); 42 U.S.C. § 1988 (1988). From this statutory scheme, the complex practice of "borrowing" state statutes of limitation for federal civil rights claims was born. *Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980).

To ascertain the correct statute of limitations, the United States Supreme Court instructed lower courts to apply the "most analogous," *Board of Regents,* 446 U.S. at 488, 100 S.Ct. at 1797, and "most appropriate" state statute of limitation. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). Finding an appropriate, analogous state statute, however, proved to be a difficult exercise. *See generally* Lee L. Cameron, Note, *Civil Rights: Determining the Appropriate Statute of Limitations for Section 1983 Claims,* 61 Notre Dame L.Rev. 440 (1986) (discussing difficulties encountered by courts attempting to discern proper statute of limitations).

In an attempt to resolve lower courts' confusion, the United States Supreme Court articulated a three-part analysis to divine the correct statute of limitation. *Burnett v. Grattan,* 468 U.S. 42, 47–48, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984). In *Burnett,* the Court considered whether a six-month limitations period imposed on employment discrimination claims by a Maryland administrative statute would apply to the plaintiff's federal civil rights claims. *Id.* at 44–45, 104 S.Ct. at 2926–27. Applying section 1988's borrowing language, the Court stated:

> Congress has directed federal courts to follow a three-step process to borrow the appropriate rule. First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal rights statutes] into effect." If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum state. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States."

*Id.* at 47–48, 104 S.Ct. at 2928 (citations omitted). After describing the remedial role of the Civil Rights Acts, the Court noted the primacy of the federal interests implicated by the civil rights laws. *Id.* at 52–53, 104 S.Ct. at 2930–31. Citing *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977), the Court recognized that "[s]tate legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate of interfere with the implementation of national policies.[ ]" *Id.*

**6.** Originally enacted as the Civil Rights Act of 1871 (Ku Klux Klan Act), ch. 22, 17 Stat. 13 (1871) (codified as amended in 42 U.S.C. § 1983 (1988)).

**7.** Specifically, the statutory language provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983 (1988).

468 U.S. at 52–53, 104 S.Ct. at 2930–31. Thus, "[t]o the extent that particular state concerns[8] are inconsistent with, or of marginal relevance to, the policies of the Civil Rights Acts, the resulting state statute of limitations may be inappropriate for civil rights claims." *Id.* at 53, 104 S.Ct. at 2931.

With respect to the Maryland statute, the court found that the Maryland statute was not analogous to a federal civil rights claim because Maryland statute's lacked the remedial purpose of the Civil Rights Act due to the state agency's limited judicial authority. *Id.* at 54, 104 S.Ct. at 2931. Additionally, Maryland's statutory scheme, unlike the Civil Rights Act, did not create a private cause of action. *Id.* The Maryland cause of action, therefore, was not "analogous" to the federal civil rights claim for borrowing purposes. Lastly, the "divergence" of state and federal goals was "clear." *Id.* The Maryland Legislature's desire to protect public officials "from the seemingly endless stream of unfounded, often stale, lawsuits brought against them" was "manifestly inconsistent with the central objective of the Reconstruction–Era civil rights statutes." *Id.* at 55, 104 S.Ct. at 2932. The Court affirmed the Fourth Circuit's reversal of the trial court's use of Maryland's six-month statute of limitations for federal civil rights claims. *Id.*

Despite the Court's guidance, lower federal courts continued to struggle in determining the appropriate statute of limitation, particularly when the state provided alternative limitation periods. *See Wilson*, 471 U.S. at 274 n. 32, 105 S.Ct. at 1946 n. 32. In particular, courts faced the difficult task of characterizing the nature of the section 1983 claim before them in relation to the particular state's statute of limitation. *Id.* Seeking to provide clearer guidance, subsequent Supreme Court decisions concluded that a section 1983 claim should be characterized as a personal injury action. *Id.* at 278, 105 S.Ct. at 1948. Moreover, if state law contained more than one personal injury statute of limitation, the state's "residual" limitations period provided the "most analogous" statute for borrowing purposes. *Owens v. Okure*, 488 U.S. 235, 250, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989).

These recent Supreme Court decisions appear to have answered lingering questions regarding which state statutes are "analogous" to civil rights claims under section 1983. *See, e.g., Mismash v. Murray City*, 730 F.2d 1366, 1367 (10th Cir.1984) (concluding that Utah's residual four-year statute of limitations applied to section 1983 claims); *Maddocks v. Salt Lake City Corp.*, 740 P.2d 1337, 1339 (Utah 1987) (same).

2. Utah's Two–Year Statute of Limitations for Section 1983 Claims

In 1987, the Utah Legislature enacted a statute of limitations specifically targeted at claims under 42 U.S.C. § 1983 (1988). The statute provides that an action "for injury to the personal rights of another as a civil rights suit under 42 U.S.C. 1983" must be brought within two years. Utah Code Ann. § 78–12–28(3) (1992).[9] To determine whether this statute should be borrowed under section 1988 of Title 42, this court follows the analysis outlined by the Supreme Court in *Burnett*.

The *Burnett* decision requires this court, first, to determine if a federal limitations period exists. *Burnett*, 468 U.S. at 47, 104 S.Ct. at 2928. If no federal statute of limita-

---

8. The court suggested that "the need for repose for potential defendants, considerations of judicial or administrative economy, and the relationship to other state policy goals" constituted possible state concerns. *Id.* 468 U.S. at 53, 104 S.Ct. at 2931.

9. In a 1991 decision, this court refused to apply the Utah statute on the grounds that it was neither appropriate nor analogous and therefore was "inconsistent with federal law and policy." *Sheets v. Lindsey*, 783 F.Supp. 577, 582 (D.Utah 1991) (Chief Judge Bruce S. Jenkins). The *Sheets* decision offered a principled rejection of the Utah statute by examining the statute's effect on section 1983 claims. *Id.* at 580–82. Specifically, the *Sheets* court focussed on the state's improper intrusion into the federal sphere by intentionally limiting a federal cause of action. *Id.* Subsequently, in *Arnold v. Duchesne County*, 810 F.Supp. 1239 (D.Utah 1993), Judge Dee V. Benson adopted the two-year Utah statute of limitations and issued an opinion disagreeing with Judge Jenkins' rationale in *Sheets*. This court agrees with the *Sheets* decision and, in the interest of clarifying the issues presented by Utah's statute, issues this Memorandum Decision and Order.

tions exists, the court must examine state law to find the most appropriate and most analogous state law to be applied. *Id.* at 47–48, 104 S.Ct. at 2928. Finally, if the state law is not "inconsistent with" the underlying federal law, the court should borrow the state law. *Id.* at 48, 104 S.Ct. at 2928. The question before this court involves the third step of the *Burnett* analysis. Specifically, is Utah's two-year statute of limitations "inconsistent with" federal law and policy? This court believes that it is.

When inquiring whether a statute of limitations is impermissibly inconsistent with federal law, courts have focussed on two particular issues: First, does the state statute of limitations embody state policy choices that are divergent from the policies of the substantive federal claim? *See Burnett*, 468 U.S. at 53, 104 S.Ct. at 2931. Second, does the state statute provide a shorter limitations period for a federal right than for a similar state right? *See Johnson v. Davis*, 582 F.2d 1316 (4th Cir.1978); *Matthewman v. Akahane*, 574 F.Supp. 1510 (D.Haw.1983); *Van Horn v. Lukhard*, 392 F.Supp. 384 (E.D.Va. 1975). If either of these questions is answered in the affirmative, the court should not borrow the state statute of limitations.

*a. Utah Code section 78–12–28(3) contains state policy concerns that conflict with the Civil Rights Acts' remedial purpose.*

■ On March 2, 1987, the Utah Legislature adopted Senate Bill 26, which amended several sections of Utah's statutes of limita-

tion. *See* 1987 Utah Laws 310. Senate Bill 26 amended section 78–12–28 of the Utah Code to require that a suit "for injury to the personal rights of another as a civil rights suit under 42 U.S.C. 1983" be brought within two years.[10] Utah Code Ann. § 78–12–28(3) (1992). Prior to this amendment, Utah applied a residual four-year limitations period under Utah Code section 78–12–25(3). *See Mismash*, 730 F.2d at 1367 (citing Utah Code Ann. § 78–12–25(3) (1992)). During the Utah Senate's discussion of Bill 26, Senator Lyle Hillyard, the Bill's proponent, stated that the two-year period was selected because he believed it provided a "fair period for the statute of limitations for 1983 civil rights actions." *See* Floor Debate, remarks by Sen. Lyle W. Hillyard, 47th Utah Leg., Gen.Sess. (Jan. 16, 1987) (Senate Recording No. 1, Side 1). Senator Hillyard added that, rather than a four-year period, a two-year period should be adopted "because of the proliferation of the civil rights actions that are being filed, especially in our prisons." *Id.* During the legislature's discussion of the amendment, possible state concerns about judicial economy, or other policy goals, were not mentioned. Rather, the amendment to section 78–12–28 simply sought to reduce the number of civil rights actions filed under section 1983 in Utah.

By enacting section 78–12–28(3), the Utah Legislature passed a statute of limitations that is inconsistent with the federal policies behind 42 U.S.C. § 1983 (1988).[11] First, sec-

---

10. In an earlier draft, Senate Bill 26's amendment to section 78–12–28 was significantly different. The prior draft of section 78–12–28(3) stated that an action *"for personal injury, or injury to the personal rights of another"* must be commenced within two years. This general language clearly comports with the *Wilson* Court's characterization of section 1983 claims. *See Wilson*, 471 U.S. at 278, 105 S.Ct. at 1948. The final draft, however, deleted the general reference to "personal injury" and substituted a specific reference to section 1983 claims.

Also, this history casts considerable doubt upon the *Arnold* court's belief that the legislature may have intended section 78–12–28(3) to apply to both section 1983 claims and section 1985 claims. *See Arnold*, 810 F.Supp. at 1245 n. 7. The final draft of Senate Bill 26 removed any ambiguity in the statute's language and the legislative history lacks any reference to any civil rights actions other than section 1983 claims.

11. Currently, Utah's statute of limitation is the only limitation period that specifically targets section 1983 claims. The overwhelming majority of the states apply personal injury statutes of limitation. This, of course, avoids the issue of state discrimination against the federal cause of action because it treats section 1983 claims identically with state personal injury claims. *See* Ala.Code § 6–2–38 (Supp.1992); Alaska Stat. § 09.10.070 (1983); Ariz.Rev.Stat.Ann. § 12–542(1); Ark.Code Ann. § 16–56–105 (1987); Cal. Civ.Proc.Code § 340 (West Supp.1993); Conn. Gen.Stat. § 52–584 (1993); Del.Code Ann. tit. 10, § 8119 (1975); Fla.Stat.Ann. § 95.11 (West Supp.1987); Ga.Code Ann. § 9–3–33 (1982); Idaho Code § 5–219 (1990); Ill.Ann.Stat. ch. 110, para. 13–202 (1984); Ind.Code Ann. § 34–1–2–2(1) (Burns 1986); Iowa Code Ann. § 614.-1(2) (West Supp.1992); Kan.Stat.Ann. § 60–513(a)(4) (1983); Ky.Rev.Stat.Ann. § 413.140

tion 78–12–28(3) impermissibly shields the State and persons acting under color of state law from claims under section 1983 while providing longer limitations periods for similar federal and state claims. Second, section 78–12–28(3) disrupts the neutral rules of decision which, under section 1988, should be "available to enforce the civil rights actions, *among them § 1983." Wilson,* 471 U.S. at 269, 105 S.Ct. at 1943 (emphasis added).

■ Regarding the policies behind section 1983, "[t]he goals of the federal statutes are compensation of persons whose civil rights have been violated, and prevention of the abuse of state power." *Burnett,* 468 U.S. at 53, 104 S.Ct. at 2931. Following those goals, the Court has "given full effect to [section 1983's] broad language, recognizing that § 1983 'provide[s] a remedy, to be broadly construed, against all forms of official violation of federally protected rights.'" *Dennis v. Higgins,* 498 U.S. 439, 445, 111 S.Ct. 865, 869, 112 L.Ed.2d 969 (1991) (quoting *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 684, 98 S.Ct. 2018, 2032, 56 L.Ed.2d 611 (1978)). If, therefore, a statute of limitation is enacted upon state concerns that "are inconsistent with, or of marginal relevance to, the policies informing the Civil Rights Acts," the statute should not be borrowed. *Burnett,* 468 U.S. at 53, 104 S.Ct. at 2931; *see also Rosales v. Lewis,* 454 F.Supp. 956, 960 (S.D.Iowa 1978) (refusing to apply state limitation period targeted at section 1983 claims

when state's personal injury statute of limitations better reflected federal policies).

■ With respect to the statute at hand, the express purpose of Utah's statute of limitation is to reduce the number of civil rights actions filed in Utah. This policy is directly inconsistent with the Civil Rights Act's broad, remedial goals because it seeks to minimize governmental liability by targeting section 1983. Section 1983 provides individuals a federal remedy for the deprivation of federal rights by persons acting under color of state law. Not surprisingly, section 1983 claims are frequently filed against state officials acting in their official or personal capacity. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). In contrast, other, equally important, federal civil rights claims may be brought against private individuals for denial of equal rights under the law, *see* 42 U.S.C. § 1981 (1988), or denial of property rights, *see* 42 U.S.C. § 1982 (1988). Neither section 1981 nor section 1982 require the violation to occur "under color of state law," or require any type of "state action" to trigger their respective protections. *See, e.g., Terry Properties, Inc. v. Standard Oil Co.,* 799 F.2d 1523 (11th Cir.1986) (state action not required for section 1982 claim).

Addressing the policy of federal civil rights laws, the United States Supreme Court recently rejected Wisconsin's attempt to re-

(Michie/Bobbs–Merrill 1992); La.Civ.Code Ann. art. 3492 (West 1953 & Supp.1992); Me.Rev. Stat.Ann. tit. 14, § 752 (1980); Md.Cts. & Judic.Proc.Code Ann. § 5–101 (1992); Mass.Ann. Laws ch. 260, § 2A (Law. Co-op.1992); Mich. Comp.Laws Ann. § 600.5805(8) (West 1987); Minn.Stat.Ann. § 541.07(1) (West Supp.1993); Miss.Code Ann. § 15–1–35 (Supp.1992); Mo. Ann.Stat. § 516.120 (Vernon 1952); Mont.Code Ann. § 27–2–204 (1992); Neb.Rev.Stat. § 25–207 (1989); Nev.Rev.Stat.Ann. § 11.190(3) (Michie Supp.1991); N.H.Rev.Stat.Ann. § 508:4 (Supp. 1992); N.J.Stat.Ann. § 2A:14–2 (West 1987); N.M.Stat.Ann. § 37–1–8 (1990); N.Y.Civ.Prac.L. & R. 214(5) McKinney Supp.1990); Ohio Rev. Code Ann. § 2305.10 (Anderson 1991); Okla. Stat.Ann. tit. 12, § 95 (West Supp.1988); Or.Rev. Stat. § 12.110 (1991); . Pa.Stat.Ann. tit. .42, § 5524 (Purdon Supp.1992); R.I.Gen.Laws § 9–1–14 (1985); S.C.Code Ann. § 15–3–530(5) (Law. Co-op.Supp.1992); S.D.Codified Laws Ann. § 15–2–14 (1984); Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986); Vt.Stat.Ann. tit.

12, § 512 (1973 & Supp.1992); Va.Code Ann. § 8.01–243 (Michie 1992); Wash.Rev.Code Ann. § 4.16.080 (West 1962); W.Va.Code § 55–2–12(b) (1981); Wis.Stat.Ann. § 893.53 (West 1983); Wyo.Stat. § 1–3–105(a)(iv)(C) (1988).

Several states have enacted general statutes of limitation which apply to *all* federal causes of action which do not have a limitations period. *See* Colo.Rev.Stat. § 13–80–102 (1987); Haw. Rev.Stat. § 657–11 (1988); N.C.Gen.Stat. § 1–52 (Supp.1992). One state has created a statute of limitation that applies to all statutory causes of action, state or federal, which lack a limitations period. *See* N.D.Cent.Code § 28–01–16(2) (1991). Finally, one state has enacted a statute of limitations applicable to *all* federal civil rights actions. *See* Tenn.Code Ann. § 28–3–104(a)(3) (1980). However, these general limitations periods are readily distinguishable from Utah's statute which specifically targets section 1983 civil rights action for constitutional violations "under color of state law."

quire plaintiffs to comply with the state's notice-of-claim statute [12] prior to bringing suit on the section 1983 remedy. *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). The Court found that such a requirement was "manifestly inconsistent" with the federal section 1983 remedy for several reasons. *Id.* at 141, 108 S.Ct. at 2308.

> First, it [the Wisconsin statute] conditions the right of recovery that Congress has authorized, and does so for a reason manifestly inconsistent with the purposes of the federal statute: to minimize governmental liability. Nor is this condition a neutrally and uniformly applicable rule of procedure; rather, it is a substantive burden imposed only upon those who seek redress for injuries resulting from the use or misuse of governmental authority.

*Id.* Additionally, the Court reasoned that "[a]lthough it is true that the notice of claim statute does not discriminate between state and federal causes of action against local governments, the fact remains that the law's protection extends only to government defendants and thus conditions the right to bring suit against the very persons and entities Congress intended to subject to liability." *Id.* at 144–45, 108 S.Ct. at 2309–10. In rejecting the Wisconsin statute, the Court concluded "[a] state law that conditions the right of recovery upon compliance with a rule designed to minimize governmental liability ... is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law." *Id.* at 153, 108 S.Ct. at 2314.

By targeting section 1983, Utah's two-year statute of limitations expressly protects the state of Utah, and its employees, from the type of civil rights claim most likely to be brought against them. Other federal civil rights claims, frequently filed against private citizens, received no such reduced limitations period from the Utah Legislature. Such disparate treatment manifests a specific legislative intent to curtail section 1983 claims by shortening the period in which such a claim may be brought, thereby minimizing governmental liability. This constitutes an impermissible constraint by the State of Utah on a uniquely federal remedy. As Judge Jenkins noted, "[w]hen the fundamental goal of a federal remedy is to deter abuses of those acting under color of state law, it is hardly appropriate to permit a state itself to limit the time period in which a claim may be brought against a person acting under color of state law." *Sheets*, 783 F.Supp. at 581 n. 9. Yet, Utah's Legislature has enacted precisely such a statute. This is manifestly at odds with the remedial purposes of the federal remedy embodied in section 1983.

Furthermore, Utah's two-year statute of limitations creates unpredictability and inconsistency for federal civil rights claims filed in this State. In *Wilson*, the Court observed that "Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." *Wilson*, 471 U.S. at 269, 105 S.Ct. at 1943. The court added that "[t]he importance of the policies and purposes of the States on matters of civil rights is not the primary office of the borrowing provision in § 1988; rather, the statute is designed to assure that neutral rules of decision [13] will be available to enforce the civil rights actions, *among them § 1983.*" *Id.* (emphasis added).

It is quite clear, however, that Utah's specific limitations period on section 1983 claims assures that neutral rules of decision will *not* apply to civil rights actions in Utah. For example, if a litigant commenced a civil rights action under section 1985 or section 1981 of Title 42, Utah's four-year statute of

---

**12.** The Wisconsin statute provided, in part, that before a suit may be brought against the state or any local governmental entity, the plaintiff must provide the defendant notice of his intent to sue within 120 days of the alleged injury. *See* Wis. Stat.Ann. § 893.80(1)(a) (West 1983).

**13.** Under the Rules of Decision Act, 28 U.S.C. § 1652 (1988), the Supreme Court has long rec-

ognized that "no laws of the several states have been more steadfastly or more often recognized by this court, from the beginning, as rules of decision in the courts of the United States, than statutes of limitations of actions, real and personal, as enacted by the legislature of the state." *Bauserman v. Blunt*, 147 U.S. 647, 652, 13 S.Ct. 466, 468, 37 L.Ed. 316 (1893).

limitations would likely apply to those claims under section 1988's borrowing provision. *See* Utah Code Ann. § 78–12–25(3) (1992); *see, e.g., Webb v. Indiana Nat'l Bank,* 931 F.2d 434, 435 (7th Cir.1991) (borrowing personal injury statute of limitation for section 1981 claim); *Mathis v. Indemnity Ins. Co.,* 588 F.Supp. 489, 493 (S.D.Miss.1983) (applying residual statute of limitation to section 1985 action). If the litigant desired to include a section 1983 claim among those claims, however, Utah's two-year statute of limitations would preclude that claim if it were not filed within two years. By adopting section 78–12–28(3), the Utah Legislature has determined that some federal civil rights claims deserve more protection than others.[14] This type of state legislative encroachment runs afoul of *Wilson's* proscriptions, as well as general principles of federalism. *See Sheets,* 783 F.Supp. at 580–81. Consequently, Utah's two-year statute of limitations contains state policy choices that are inconsistent with the procedure and goals of the federal civil rights remedies.

*b. Utah Code section 78–12–28(3) provides a shorter period of limitations for section 1983 claims than similar state claims.*

Under Utah Code section 78–12–28(3), a section 1983 claim must be brought within two years. By contrast, Utah law requires that a claim for personal injuries, not otherwise specified in the statute, be filed within four years from the date the statute begins to run. *See* Utah Code Ann. § 78–12–25(3) (1992); *Matheson v. Pearson,* 619 P.2d 321 (Utah 1980). In 1984, the United States Court of Appeals for the Tenth Circuit expressly concluded that Utah's four-year residual statute of limitations properly "characterized" section 1983 claims for borrowing purposes. *Mismash v. Murray City,* 730 F.2d 1366, 1367 (10th Cir.1984) (citing *Garcia v. Wilson,* 731 F.2d 640 (10th Cir.1984), *aff'd,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)).

 Courts have rejected state statutes of limitation that target section 1983 claims while providing longer periods of limitation for similar state claims.[15] *Johnson,* 582 F.2d at 1317–19; *Matthewman,* 574 F.Supp. at 1515–21; *Van Horn,* 392 F.Supp. at 388–91. In *Johnson,* the court refused to borrow a Virginia statute of limitation that specifically provided a one-year limitations period for actions under section 1983.[16] The court observed that, to borrow the statute, "would be to impose an unreasonably discriminatory limitation period on the assertion of important federally protected rights." *Id.* 582 F.2d at 1319 (citing *Van Horn,* 392 F.Supp.

14. The *Arnold* decision concluded that equal protection difficulties could arise if two federal civil rights actions were subjected to different statutes of limitation. *See Arnold,* 810 F.Supp. at 1245 n. 7. In rejecting that argument with respect to section 78–12–28(3), the court stated that, because actions under 42 U.S.C. § 1985 (conspiracy to interfere with civil rights) are more complex than section 1983 claims, the Utah Legislature rationally determined that a section 1983 claim was "simpler" and required less time to develop. *Id.* As the above discussion indicates, the Utah Legislature made no such determination.

More importantly, however, the *Arnold* court's narrow example fails to consider equally "simple" claims under section 1981 (equal rights under the law), or section 1982 (property rights of citizens), which would likely receive a four-year limitations period under Utah law. Thus, even following the *Arnold* decision's reasoning, section 78–12–28(3) would violate principles of equal protection because it subjects one federal civil rights claim to a two-year limitations period

while allowing a four-year period for other similar federal civil rights claims.

15. To the contrary, the Ninth Circuit found that an Oregon statute that targeted section 1983 actions could be applied by federal courts. *See Nored v. Blehm,* 743 F.2d 1386 (9th Cir.1984) (citing Or.Rev.Stat. § 30.265(1) (1978)). Since the *Nored* decision, however, the language in section 30.265(1) referring to section 1983 claims has been deleted. *See* Or.Rev.Stat. § 30.-265(1) (1992). Moreover, the Ninth Circuit, following *Garcia,* has subsequently found that "Oregon's two-year statute of limitations for personal injury actions applies to actions under 42 U.S.C. § 1983." *Cooper v. City of Ashland,* 871 F.2d 104, 105 (9th Cir.1989) (citing Or.Rev.Stat. § 12.110 (1989)).

16. The Virginia statute stated: "Notwithstanding any other provision of law to the contrary, every action brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. 1983, shall be brought within one year next after the right to bring the same shall have accrued." Va.Code Ann. § 8–24 (1975).

at 384). The court referred to section 1983 claims as a "constitutional tort remedy" which was created to protect federal rights. *Id.* Virginia's special limitation period "unreasonably discriminated against the 'constitutional tort remedy' because all other personal injury actions in Virginia [were] governed by a two-year period." [17] *Id.* The court refused to apply the state limitations period against section 1983 claims. *Id.; see also Felder,* 487 U.S. at 141–42, 108 S.Ct. at 2308 (rejecting Wisconsin statute, in part, because the statute provided a shorter limitation period for a section 1983 claim than the similar state law claim).

Similar to the statutory scheme in *Johnson,* a tort claim filed under section 78–12–25(3) must be brought within four years. If, however, the underlying tort also infringed on the plaintiff's federal constitutional rights, section 78–12–28(3) requires the plaintiff to commence the section 1983 action within two years. Thus, the constitutional tort remedy is circumscribed by the Utah Legislature's desire to stem the proliferation of civil rights claims in Utah. The legislature has truncated the plaintiff's ability to vindicate federal rights while protecting analogous state rights by providing longer limitations periods for those actions. As Judge Jenkins noted in *Sheets,* Utah's two-year limitations period "does not even purport to deal with similar state created or recognized state causes of action." *Sheets,* 783 F.Supp. at 581. Indeed,

because it fails to do so, Utah's statute discriminates against the federal remedy embodied in section 1983. To avoid such a discriminatory impact, section 1983 claims should be filed within four years, as required by Utah's four-year residual statute of limitations for "[a]n action for relief not otherwise provided for by law." Utah Code Ann. § 78–12–25(3) (1992); *see also Mismash,* 730 F.2d at 1367.

It may be argued that this court should analogize the two-year limitations period placed upon section 1983 claims with a different Utah statute of limitations. *See Arnold,* 810 F.Supp. at 1245–46. For example, Utah Code Section 78–12–28(1) provides two years for actions against officials acting in their "official capacity." [18] The recent *Arnold* decision asserts that "the selection of the same statute of limitations for an action against state officers [78–12–28(1)] and for section 1983 claims indicates to the court that the legislature reasonably assessed the length of time required to bring a cause of action against an individual under color of state law." [19] *Id.* at 1245. The *Arnold* decision concludes that the similarity between section 78–12–28(1)'s two-year limitation of action against an "officer" and section 78–12–28(3)'s two-year limitation against section 1983 claims evidenced the Utah Legislature's nondiscriminatory intent in enacting the latter statute of limitation.[20] *Id.* This interpreta-

---

**17.** Following *Johnson,* Virginia applied a two-year statute of limitations for personal injury to claims under 42 U.S.C. § 1983 (1988). *See United Steelworkers of America v. Dalton,* 544 F.Supp. 291, 296–97 (E.D.Va.1982).

**18.** The statute provides two years for an action "against a marshal, sheriff, constable, or other officer upon a liability incurred by the doing of an act in his official capacity, and in virtue of his office, or by the commission of an official duty, including the nonpayment of money collected upon an execution; but this section does not apply to an action for an escape." Utah Code Ann. § 78–12–28(1) (1992).

**19.** In fact, as discussed above, the Utah Legislature never considered why two years would be an appropriate limitations period for section 1983 claims. Rather, the legislature merely intended the two-year statute of limitations to stem the "proliferation" of section 1983 civil rights claims in Utah.

**20.** Apparently, the court believed that "if the Utah Legislature had intended that the two-year time period apply *only* to section 1983 claims brought in federal court while providing a greater time period for a civil rights action in state court, it could be argued that the legislature had improperly discriminated against the federal cause of action." *Id.* at 1245–46. Yet, as the above discussion indicates, it is clear that precisely that result occurs under section 78–12–28(3) because the statute narrowly circumscribes one federal civil rights claim (section 1983) while extending a four-year limitation period to other federal civil rights claims.

 Incidentally, even a civil rights claim under Utah's Civil Rights Act, Utah Code Ann. §§ 13–7–1 to –4 (1992), is granted a three-year statute of limitations. *See* Utah Code Ann. § 78–12–26(4) (1992) (providing a three-year limitations period for "[a]n action for a liability created by the statutes of this state ... except where in special cases a different limitation is prescribed by the statutes of this state").

tion of section 78–12–28(1), in relation to the Civil Rights Act, suffers from several misconceptions regarding the nature of a section 1983 claim.

■ At the outset, it is worth noting that the United States Supreme Court has rejected the analogy between statutes of limitation applied in *Arnold. See Wilson,* 471 U.S. at 279, 105 S.Ct. at 1948. The Court stated that "we are satisfied that Congress would not have characterized § 1983 as providing a cause of action analogous to state remedies for wrongs committed by public officials." *Id.* Given the Supreme Court's characterization of such state statutes, an analogy between the limitations periods for two dissimilar claims cannot serve as a basis to infer that Utah's legislature "reasonably assessed" the period for section 1983 claims in section 78–12–28(3). Rather, as prior cases have determined, Utah's four-year residual statute of limitations provides the most appropriate analogy to assess the reasonableness of the legislature's intentions. *See Wilson,* 471 U.S. at 278, 105 S.Ct. at 1948; *Mismash,* 730 F.2d at 1367.

Moreover, it is clear that a section 1983 claim is *not* similar to a state claim under section 78–12–28(1). To illustrate, an action "against a marshal, sheriff, constable, or other officer" acting in an "official capacity" must be brought within the two-year limitation period prescribed by section 78–12–28(1). These claims must be related to the officer's conduct in her "official capacity." By contrast, the term "person" as used in section 1983 includes private individuals and corporations, as well as public officials, acting under color of law.[21] *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73

L.Ed.2d 482 (1982). Thus, any "person" who deprives a plaintiff of any constitutionally guaranteed right, privilege or immunity under of color of law commits an actionable offense. *See* 42 U.S.C. § 1983 (1988). Unlike the Utah statute, which is limited to "official capacity" claims, section 1983 provides a civil cause of action against private individuals acting "under color of law."[22] Thus, it is erroneous to compare a section 1983 claim with a claim against a state official acting in an official capacity. Accordingly, this court rejects such a mischaracterization for the purpose of determining the Utah Legislature's intent in enacting section 78–12–28(3).

In summary, Utah's two-year statute of limitation for section 1983 actions stems from state policy choices that are inconsistent with the procedure and substance of the section 1983 remedy. Moreover, by specifically targeting section 1983 claims, the Utah Legislature has discriminated against the federal cause of action while extending similar state claims greater protection. Consequently, this court refuses to borrow section 78–12–28(3) and applies the appropriate four-year limitation period in section 78–12–25(3). Thus, Plaintiffs' claims under 42 U.S.C. § 1983 accruing prior to May 29, 1987 are barred by section 78–12–25(3).

### C. Statute of Limitation for State Law Claims

■ Under Utah Code section 78–12–30, "actions on claims against a county, city or incorporated town, which have been rejected by the ... city council ... must be commenced within one year." Utah Code Ann. § 78–12–30 (1992). In the case at hand, Plaintiffs filed a notice of claim with the

---

**21.** The language "under of color of law" is equivalent, although not identical, to the constitutional doctrine of state action. *Cobb v. Georgia Power Co.,* 757 F.2d 1248 (11th Cir.1985); *Lawline v. American Bar Ass'n,* 738 F.Supp. 288 (N.D.Ill. 1990). Of course, section 1983 also reaches local government entities and natural persons such as state, county, and municipal officials. *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**22.** Additionally, section 1983 is a significantly broader remedy against government officials than the narrow claims against "officers" per-

mitted under section 78–12–28(1). For example, in an "official capacity" action under section 1983, the plaintiff is required to prove the additional element that the governmental entity is a "moving force" behind the deprivation. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). In contrast, to establish personal liability under section 1983, it is sufficient to show that the public official, acting under color of state law, caused the deprivation of a federal right. *Id.* Again, section 1983 extends protections further than the cause of action described in section 78–12–28(1).

Provo Municipal Council on November 30, 1990 in compliance with Utah Code section 63–30–13. The Provo Municipal Council rejected the claim within 90 days according to Utah Code section 63–30–14. Subsequently, Plaintiffs filed this action on May 29, 1991, within the limitations period prescribed by section 78–12–30.

Under Utah's statutory scheme, Plaintiffs' claims accruing prior to one year before Plaintiff filed a notice of claim against Provo City are barred. Thus, Plaintiffs' state law negligence action is barred for those claims accruing prior to December 1, 1989. Plaintiffs' claims arising subsequent to November 30, 1989 are not precluded by section 78–12–30.

*II. Plaintiffs' Section 1983 Claim*

■ Before a successful claim can be brought under section 1983, a plaintiff must demonstrate that he or she has been deprived of a federal right, and that the deprivation occurred under color of law. *Gunkel v. City of Emporia,* 835 F.2d 1302, 1303 (10th Cir.1987); *Casias v. City of Raton,* 738 F.2d 392, 394 (10th Cir.1984). In the case at hand, the Plaintiffs claim that Provo City denied them rights secured under the Fifth and Fourteenth Amendments to the United States Constitution. Specifically, Plaintiffs allege violations of the Equal Protection Clause, Due Process Clause and Takings Clause to support their section 1983 claim.

1. Procedural Due Process

■ Plaintiffs' section 1983 claims are grounded, in part, upon Provo City's alleged violation of Plaintiffs' procedural due process rights secured by the Fifth Amendment. It is well established that, as a threshold matter, a plaintiff must allege a property or liberty interest sufficient to invoke the protection of the Due Process Clause. *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Jacobs, Visconsi & Jacobs v. City of Lawrence,* 927 F.2d 1111 (10th Cir.1991). To establish a property interest, a plaintiff must demonstrate that he or she has a "legitimate claim of entitlement" to it. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Whether such a claim of

entitlement exists is determined according to existing state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Buckley Const. v. Shawnee Civic & Cultural Dev. Auth.,* 933 F.2d 853, 855 (10th Cir.1991).

■ For due process purposes, a typical claim of entitlement is based upon "specific statutory or contractual provisions." *Casias,* 738 F.2d at 394. Additionally, even "rules or mutually explicit understandings" may support a due process claim of entitlement. *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Thus, "a property interest may be created by state statute, administrative rule, or explicit understanding." *Gillies v. Utah County,* 765 F.Supp. 692, 694 (D.Utah 1991). The Tenth Circuit has stated that "[w]hen analyzing whether a plaintiff presents a legitimate claim of entitlement, we focus on the degree of discretion given the decisionmaker and not on the probability of the decision's favorable outcome." *Jacobs, Visconsi & Jacobs,* 927 F.2d at 1116 (citing *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978)).

For example, in *Jacobs, Visconsi & Jacobs,* a real estate developer challenged city officials' decision to deny their application to rezone an area for commercial development. *Id.* 927 F.2d at 1114. The developer alleged, in part, violations of due process and equal protection under the federal constitution in support a section 1983 claim for monetary and injunctive relief. *Id.* at 1115. Considering the developer's procedural due process claim, the Tenth Circuit focussed upon the language of the Kansas zoning statute under which the developer claimed a property interest. *Id.* at 1116. Specifically, the court noted that the statute prescribed a "reasonableness" standard for the city's refusal to rezone the property as requested by the developer. *Id.* (citing *Golden v. Overland Park,* 224 Kan. 591, 584 P.2d 130 (1978)). Thus, the statute allowed the city considerable discretion in determining whether it should rezone the specific area. *Id.* This type of discretionary authority, however, did not provide sufficient "rules or mutually explicit understandings" to support a claim of

entitlement to the rezoning of the property. *Id.* (citation omitted). The court concluded that "[i]f the decisionmaker is granted a broad range of discretion, the applicant is seeking neither an interest that he or she has already acquired nor a claim upon which he or she could rely, regardless of the characterization of the process involved." *Id.* 927 F.2d at 1118 (footnote omitted).

In the case at hand, Plaintiffs allege a due process property interest in employer contributions to their pension fund as required by the Ordinance. The Ordinance states that "Total employer contributions by Provo City for employee retirement programs … *shall be* equal in amount for all employees at the same Grade and Step on the Pay Range Table." *See* Provo City, Utah Ordinance § 4.04.140 (1992). The Ordinance provides no discretionary authority for Provo City officials to determine the amount or type of contributions to be made to the employees' retirement programs. The language of Provo's Ordinance, therefore, entitles Provo City employees of equal Pay Range Table status to *equal* contributions to their respective retirement programs.

■ In response, Provo contends that, because the Plaintiffs selected a retirement program that refused to accept employer contributions for overtime and bonus pay, the Plaintiffs are not entitled to receive such employer contributions. This argument fails to recognize the impact of Provo's Ordinance. The Ordinance alters Provo's obligations to its employees, in addition to the requirements of the employees' selected retirement program. In fact, the Ordinance's application is neither limited, nor governed, by the retirement program selected by the employee. Rather, the Ordinance's language merely requires that Provo provide equal contributions for employees of equal Pay Range Table status. As such, this court finds that the plaintiffs possess a property interest in equal employer contributions for due process purposes.

■ Once a property interest is found, the government cannot deprive an individual of that interest without due process. *Gillihan v. Shillinger,* 872 F.2d 935, 939 (10th Cir.1989). As a general rule, due process

"requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Miller v. Campbell County,* 945 F.2d 348, 353 (10th Cir.1991) (citing *Hodel v. Virginia Surface Mining and Recl. Ass'n,* 452 U.S. 264, 299, 101 S.Ct. 2352, 2372, 69 L.Ed.2d 1 (1981)).

In *Gillihan,* the Tenth Circuit considered whether prison officials denied an inmate due process by freezing funds in the inmate's prison account to pay for incarceration-related expenses without a hearing. *Id.* 872 F.2d at 938. Initially, the court recognized the inmate's property interest in his prison account. *Id.* at 939. The court noted, however, that when the deprivation of property occurs either randomly or without authorization, it will not support a section 1983 claim under due process if the plaintiff has an adequate state remedy. *Id.* (citations omitted). Nevertheless, the court added that when the deprivation is neither random nor unauthorized, but pursuant to an established policy, the governmental entity generally must provide a predeprivation hearing. *Id.* at 939–40.

The court then considered the type of hearing to which the inmate would be entitled. *Id.* at 940. In order to determine the type of hearing to which a plaintiff is entitled, the court concluded that it must balance several competing interests. *Id.* Specifically, the court was required to examine

> [T]he private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Id.* (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)). Ultimately, however, the court was unable to reach this issue because the record on appeal lacked sufficient factual evidence to scrutinize the relevant interests. *Id.*

In this case, Provo City has simply asserted that it has a "substantial interest in avoiding the administrative cost of any unnecessary procedure." *See* Def's Mem. in Supp. of Def's Mot. for Summ. J., at 22 (citation omitted). This assertion, however, is not substantiated with any factual evidence addressing the difficulty or expense of any type of predeprivation hearing. Likewise, Plaintiffs have not offered any factual evidence regarding the risks of erroneous deprivation through current procedures versus the value of additional procedural safeguards. Thus, though the Plaintiffs presented their grievances to the Provo Municipal Council on June 19, 1990, it is impossible to ascertain from the factual record presented whether additional procedural safeguards should have been afforded to the Plaintiffs. Consequently, Provo's Motion for Summary Judgment is denied as to this issue.

### 2. Substantive Due Process

Plaintiffs allege that Provo City has "arbitrarily and unreasonably refused to make appropriate employer contributions" to the Plaintiffs' retirement program according to the Ordinance in violation of the Due Process Clause of the Fifth Amendment. Compl. ¶ 15. Substantive due process protects the individual against the arbitrary actions of government. *See United States v. Certain Real Property and Premises Known as 38 Whalers Cove Drive, Babylon, N.Y.,* 954 F.2d 29 (2d Cir.1992). Absent the involvement of a fundamental right, the substantive due process inquiry requires a court to determine if the governmental action is rationally related to a legitimate state interest. *Allright Colorado, Inc. v. City and County of Denver,* 937 F.2d 1502 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 587, 116 L.Ed.2d 612 (1991); *Knight v. Tape, Inc.,* 935 F.2d 617 (3d Cir.1991).

As a threshold matter, Plaintiffs' claim under the Provo Ordinance presents a difficult constitutional issue for substantive due process purposes. Specifically, the United States Supreme Court has not explicitly considered whether state-created property interests invoke *substantive* due process protections. *See Black v. Barnes,* 776 F.Supp. 1000, 1004 (M.D.Pa.1991) (citing *Regents of University of Michigan v. Ewing,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985)). Justice Powell, concurring in the *Ewing* Court's decision [23] noted that not every property right extended by state law warranted substantive due process protection. *See Ewing,* 474 U.S. at 229, 106 S.Ct. at 515. Justice Powell argued that, though procedural due process interests may be derived from state law, substantive due process rights are created only by the federal Constitution. *Id.* (Powell, J., concurring); *see also Reich v. Beharry,* 883 F.2d 239, 243–44 (3d Cir.1989) (recognizing different origins of substantive and procedural due process rights). For the purposes of this Motion for Summary Judgment, however, this court need not resolve the issue because, even if such a property interest existed, Provo has failed to provide evidence that the decision to cease paying overtime retirement contributions was not arbitrary or irrational.

For example, in *Del Monte Dunes v. City of Monterey,* 920 F.2d 1496 (9th Cir.1990), a group of landowners brought an action against the city after the city refused to permit development of certain ocean-front property. *Id.* at 1499. The landowners alleged due process and equal protection violations of the Fifth and Fourteenth Amendments to support their remedial claims under 42 U.S.C. § 1983. *Id.* at 1500. The district court, however, granted the city's motion for summary judgment on the landowner's due process and equal protection claims based upon the city's submission of affidavits that suggested a rational basis for the city's decision. *Id.* at 1500, 1508.

On appeal, the United States Court of Appeals for the Ninth Circuit noted that the landowners submitted evidence that indicated that the city originally approved the development, but then it "abruptly changed course and rejected the plan, giving only broad conclusory reasons." *Id.* at 1508. The

---

**23.** The *Ewing* majority avoided the constitutional issue by assuming the existence of a constitutionally protectable right in the university's enrollment procedures described in a pamphlet based upon the defendant's invitation to do so. *Id.* 474 U.S. at 223, 106 S.Ct. at 512.

landowners contended that this action was arbitrary and irrational, based upon improper concerns. *Id.* The Ninth Circuit reversed the trial court's grant of summary judgment stating: "We cannot say at this stage of the proceeding that the actions of the city council ... were not arbitrary and irrational and, thus, a violation of appellants' substantive due process rights." *Id.; see also Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667, 683 (3d Cir.1991) (recognizing that disputed factual matters regarding rationality of government action precludes summary judgment on substantive due process claim).

Likewise, Plaintiffs have argued that Provo City originally paid employer contributions on their overtime compensation. Provo City, however, ceased following that policy when the PSRS refused to accept those contributions. Plaintiffs have submitted evidence that Provo City did not engage in any type of decision-making process regarding the propriety of that decision. *See* Pl's Mem. in Opp'n to Def's Mot. for Summ. J., Exhibit 3, at 27 (Dep. of Mary Taylor). It is impossible to determine, for summary judgment purposes, whether Provo City's decision was *not* arbitrary and irrational. Thus, Provo's Motion for Summary Judgment is denied as to this issue.

### 3. Equal Protection

In further support of their section 1983 claim, Plaintiffs assert a violation of the Equal Protection Clause of the 14th Amendment. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). The Plaintiffs argue that, by paying employer contributions on overtime for some employees, but not for plaintiffs, Provo City violated the Equal Protection Clause.

Municipal decisions regarding property interests, however, are presumptively constitutional. *Del Monte Dunes v. City of Monterey,* 920 F.2d 1496, 1508 (9th Cir.1990). Such a decision "need only be rationally related to a legitimate state interest, unless the distinctive treatment of the party involves either a fundamental right or a suspect classification." *Id.* (citing *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976)); *see also Potter v. Murray City,* 585 F.Supp. 1126, 1132 (D.Utah 1984), *aff'd as modified,* 760 F.2d 1065 (10th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 145, 88 L.Ed.2d 120 (1985) ("[i]f a legislative classification neither impinges on a fundamental personal right nor employs an inherently suspect classification, the court will generally uphold the classification if it is rationally related to a legitimate state interest."). With respect to the Plaintiffs' claims, Plaintiffs have alleged no suspect classification or fundamental right transgressed by Provo City. Thus, this court's inquiry must focus on whether Provo City's decision to cease paying overtime retirement contributions was rationally related to a legitimate state interest.

In their Complaint, Plaintiffs allege that the Provo Ordinance mandates equal treatment of municipal employees with respect to employer contributions to retirement plans. Compl. ¶ 24. Plaintiffs contend that, rather than rationally determining whether they should have received overtime employer contributions under the Ordinance, Provo simply acquiesced to the PSRS's refusal to accept the contributions.[24] In response, Provo argues that the Plaintiffs' election to join the PSRS, which possesses different contribution requirements, created the "unequal" classification. Alternatively, Provo asserts that the costs, and resulting inequalities among other municipal employees, prohibit the city from establishing a supplemental retirement plan for overtime contributions. Provo contends that these considerations provide a "reasonable explanation" supporting Provo's decision not to pay overtime contributions. *See* Def's Reply Mem. in Supp. of Def's Mot. for Summ. J., at 20.

For the purposes of this Motion for Summary Judgment, Provo City has offered little evidence regarding its decision-making pro-

---

24. Plaintiffs suggest that, as an alternative, Provo could have established a supplemental retirement plan for Plaintiffs to include overtime contribution to comply with the Ordinance.

cedures to support its claim that the decision followed from a rational, considered process. In fact, the facts indicate that Provo City attempted to pay employer contributions on overtime to the PSRS through 1986. The PSRS, however, refused to accept those payments. As a result, Provo City simply stopped paying overtime employer contributions to the Plaintiffs' retirement system. *See* Pl's Mem. in Opp'n to Def's Mot. for Summ. J., Exhibit 3, at 27 (Dep. of Mary Taylor). Provo City has offered no further support for its claim that the decision to cease paying overtime contributions resulted from a rational decision by the city. It is unclear whether Provo City identified a legitimate interest, or pursued that interest through rational means, with respect to overtime employer contributions. In other words, Provo City has failed to show whether it had a rational basis for treating the Plaintiffs differently under the Ordinance. As such, this court denies Provo's Motion for Summary Judgment on this issue.

### 4. Takings

In their Complaint, Plaintiffs allege, in general terms, that Provo City's failure to pay employer contributions on overtime constitutes a "taking" without just compensation in violation of the Fifth Amendment. Compl. ¶ 19–22. In response, Provo City argues that plaintiffs have no property interest in employer contributions under the Ordinance. Plaintiffs failed to respond to Provo City's Motion for Summary Judgment on the takings issue.

 Generally, before a court can determine whether government action violates the Fifth Amendment's Takings Clause, the aggrieved plaintiff must show that "the state deprived him of his property and, and second, that the state refused to compensate him for his loss." *Miller v. Campbell County*, 945 F.2d 348, 352 (10th Cir.1991) (citation omitted). The United State Supreme Court has articulated several factors that indicate whether the property owner possessed a property interest for takings purposes. *Penn Central Transp. Co. v. New York City*,

438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). In particular, a court should examine "[t]he economic impact of the regulation on the claimant, and particularly, the extent to which the regulation has interfered with distinct investment-backed expectations." *Id.* at 118, 98 S.Ct. at 2656. Additionally, courts should examine the character of the government action in terms of whether it constitutes a "physical invasion," or whether it merely adjusts the "benefits and burdens of economic life to promote the common good." *Id.*

In the case at hand, Plaintiffs have failed to argue that Provo's decision not to pay employer contributions on overtime interfered with any specific "investment-backed expectations." In fact, Plaintiffs have not responded to Provo's Motion for Summary Judgment at all regarding this issue. Absent some disputed material fact, or identifiable property interest for takings purposes, Plaintiffs' Complaint cannot survive summary judgment on this issue. Accordingly, Plaintiffs' Motion for Summary Judgment is granted on the takings issue.

### III. Plaintiffs' State Law Claims

#### A. Due Process Claim Under the Utah Constitution

 Plaintiffs assert that Provo City's failure to pay overtime employer contributions also violated their due process [25] rights under the Utah Constitution. In response, Provo City argues that the Utah Governmental Immunity Act [26] precludes liability for governmental entities for such "civil rights" claims.

Under Utah Code section 63–30–10(2) "[i]mmunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission by an employee within the scope of employment except if the injury arises out of . . . violation of civil rights." Utah Code Ann. § 63–30–10(2) (Supp.1992). The term "civil rights" has been defined as those civil liberties which are "[p]ersonal, natural rights guaranteed

---

**25.** *See* Utah Const. art. 1, § 7.

**26.** *See* Utah Code Ann. § 63–30–1 to –38 (1989 & Supp.1992).

and protected by the Constitution." Black's Law Dictionary 223 (5th ed. 1979); *see also* 15 Am.Jur.2d *Civil Rights* § 1 (1976) ("the term 'civil rights' refers to the enjoyment of such guaranties as are contained in constitutional or statutory law[.]"). Plaintiffs' claims under the Utah Constitution's Due Process Clause fall within the definition of "civil rights" guaranteed by the state constitution.

Because the State of Utah has not waived governmental immunity for such suits, Plaintiffs' claims are barred by the Utah Governmental Immunity Act. Consequently, Provo City's Motion for Summary Judgment is granted as to this issue.

### B. Negligence Claim

■ Plaintiffs assert that Provo City, or its employees, negligently failed to provide employer contributions on their overtime compensation. Provo City asserts that Plaintiffs' claims are barred because Provo's decision not to make overtime contributions to Plaintiffs' retirement system resulted from a "discretionary" function.

Under Utah's Governmental Immunity Act, immunity from suit is waived for all governmental entities unless the injury arises out of "the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused." Utah Code Ann. § 63–30–10(1) (1991). This statutory language provides a "discretionary exception" of immunity for negligent governmental acts. This exception "was intended to provide immunity for policy-making decisions rather than for policy implementation or operational acts." *Irvine v. Salt Lake County*, 785 P.2d 411, 413 (Utah 1989). To ascertain whether a decision was "discretionary," the Utah Supreme Court has articulated a four-part test to examine the nature of the governmental entity's conduct. *Little v. Utah State Div. of Family Servs.*, 667 P.2d 49 (Utah 1983). "To be purely discretionary, an act by the [governmental entity] must be affirmed under four preliminary questions." *Id.* at 51.

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?

(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of the policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?

(3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

(4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Id.* (citing *Evangelical United Brethren Church of Adna v. State*, 67 Wash.2d 246, 407 P.2d 440 (1965)). If all of these questions are answered in the affirmative, the act is discretionary and immunity has not been waived.

■ However, when the factual record regarding the governmental entity's decision-making process is unclear, courts should be reluctant to grant summary judgment on the basis of governmental immunity. *See Hansen v. Salt Lake County*, 794 P.2d 838, 846 (Utah 1990); *Rocky Mountain Thrift v. Salt Lake City*, 784 P.2d 459, 464 (Utah 1989). In *Hansen*, the Utah Supreme Court considered a landowner's claim that Salt Lake County had negligently destroyed improvements that he had built on his property near a stream. *Hansen*, 794 P.2d at 839. In a motion for summary judgment, Salt Lake County argued, in part, that Utah Code section 63–30–10(1) precluded the county's liability for actions taken in furtherance of its flood control program. *Id.* Salt Lake County maintained that removing the improvements that the landowner had built "involved an exercise in judgment and constituted a discretionary function." *Id.* at 846. The trial court granted summary judgment in favor of Salt Lake County.

Considering the issue on appeal, the Utah Supreme Court noted that, because it lacked a clear record of the county's decision-making process, it could not "determine as a matter of law whether all of the acts complained of were discretionary." *Id.* Thus, the court remanded the issue to the trial court for a factual determination regarding

the county's decision. *Id.; see also Rocky Mountain Thrift,* 784 P.2d at 464 (reversing summary judgment granting immunity where factual record unclear regarding nature of city's decision-making process).

■ Similarly, the facts presented by Provo City provide, at best, a contradictory picture of Provo City's decision not to pay contributions on the Plaintiffs' overtime pay. On the one hand, Provo City's decision may have involved policy choices regarding the implementation of the Ordinance. Alternatively, Provo City, and its employees, may have simply failed to follow the requirements imposed by the Ordinance because of the PSRS's refusal to accept Provo's contributions. *See* Pl's Mem. in Opp'n to Def's Mot. for Summ. J., Exhibit 3, at 27 (Dep. of Mary Taylor). The court believes that, at this point in the case, it is impossible to determine whether Provo City engaged in the type of "discretionary" decision-making that would preclude liability under Utah Code section 63–30–10(1). Therefore, Provo's Motion for Summary Judgment is denied as to that issue.

### C. Requirement to File an Undertaking

■ Under Utah Code section 63–30–19, a party seeking to file an action against a governmental entity must file an "undertaking" to properly commence the action. Utah Code Ann. § 63–30–19 (1989).[27] In this case, Provo City claims that Plaintiffs' Complaint should be dismissed because Plaintiffs failed to file the undertaking in a timely fashion.[28] In response, Plaintiffs claim that they followed the proper procedures required for filing an undertaking in the United States District Court for the District of Utah.

The Tenth Circuit has recently considered the issue of whether an "undertaking" was

properly filed under section 63–30–19. *See Rippstein v. City of Provo,* 929 F.2d 576 (10th Cir.1991). The court focussed specifically on the language of section 63–30–19 which requires: "*At the time of filing the action* the plaintiff shall file an undertaking in a sum fixed by the court." *Id.* at 577. The *Rippstein* court concluded that, given the unambiguous language, "an undertaking must be filed *contemporaneously* with the complaint in order to be timely." *Id.* at 578. If the undertaking is not filed contemporaneously with the complaint, a court must dismiss the complaint without prejudice. *Id.*

In this case, Plaintiffs delivered their Complaint with the Clerk of Court on May 23, 1991 without paying the filing fee. Subsequently, on May 29, 1991, Plaintiffs filed an Ex Parte Motion to Fix Amount of Undertaking. United States District Judge Bruce S. Jenkins signed the Order affixing the amount of the undertaking at $300.00 on May 29, 1991. Plaintiffs paid the $300.00 undertaking, as well as the $120.00 filing fee, on May 29, 1991. Provo City contends that the six-day difference between the date of delivering the Complaint and the payment of the undertaking violates *Rippstein's* requirement of a contemporaneous filing. Provo contends that the undertaking must be filed *at the same time* as the Complaint.

■ Under the Rules of Practice for the District of Utah, Rule 108(b) provides that the "[t]he clerk of court shall not accept any action for filing with the court which is not accompanied by payment of fees." D.Utah R. 108(b). The payment of fees is a required condition of filing a complaint. Absent the payment of the filing fee, a plaintiff may not commence a civil action in this court.[29] In this case, Plaintiffs did not pay any fees when they delivered their Complaint with the Clerk of Court. Thus, the Complaint was not "filed" for purposes of section 63–30–19's

---

**27.** The statute's language provides:

*At the time of filing the action* the plaintiff shall file an undertaking in a sum fixed by the court, but in no case less than the sum of $300, conditioned upon payment by the plaintiff of taxable costs incurred by the governmental entity in the action if the plaintiff fails to prosecute the action or fails to recover judgment.
Utah Code Ann. § 63–30–19 (1989) (emphasis added).

**28.** The requirement to file an undertaking applies only to Plaintiffs' state law claim. *See Felder,* 487 U.S. at 144, 108 S.Ct. at 2309; *Martinez v. California,* 444 U.S. 277, 284 & n. 8, 100 S.Ct. 553, 558 & n. 8, 62 L.Ed.2d 481 (1979).

**29.** As an exception to this general rule, a plaintiff may avoid payment of the filing fee if he or she is granted permission to proceed in Forma Pauperis. D.Utah R. 108(b).

requirement to submit an "undertaking." Rather, Plaintiffs' Complaint was filed when Plaintiffs paid the filing fee as required by Rule 108(b) on May 29, 1991. Because Plaintiffs paid the required undertaking on May 29, 1991, Plaintiffs fulfilled the requirement that "[a]t the time of filing the action the plaintiff shall file an undertaking." Accordingly, this court denies Provo's Motion for Summary Judgment on the grounds that Plaintiffs failed to file an undertaking in a timely fashion.

### CONCLUSION

Based upon the foregoing legal analysis, and upon considering the factual record before it, this court reaches the following conclusions. First, Plaintiffs' claims under 42 U.S.C. § 1983 accruing prior to May 29, 1987 are barred by Utah Code section 78–12–25(3). Second, Plaintiffs' state law negligence claims accruing prior to December 1, 1989 are barred by Utah Code section 78–12–30. The "discovery rule" does not apply to Plaintiffs' state or federal claims. Accordingly, Provo City's Motion for Summary Judgment is granted to that extent.

With respect to the underlying constitutional claims supporting Plaintiffs' section 1983 action, Provo City's Motion for Summary Judgment is granted as to Plaintiffs' "takings" claim under the Fifth Amendment. However, the court denies summary judgment on Plaintiffs' equal protection and due process claims due to disputed issues of material fact regarding Provo City's decision-making process. Accordingly, the court denies summary judgment on Plaintiffs' section 1983 claim.

Finally, the court grants Provo City's Motion for Summary Judgment barring Plaintiffs' due process claim under the Utah Constitution on the basis of governmental immunity. However, the court denies Provo City's Motion for Summary Judgment on Plaintiffs' negligence claim based on discretionary immunity, as well as Plaintiffs' failure to file an undertaking for the reasons stated above.

IT IS SO ORDERED.