**J. Gary SHEETS, Plaintiff,**

v.

**Robert LINDSEY, Simon & Schuster, Inc., a corporation, Salt Lake County, a governmental subdivision of the State of Utah, Theodore L. Cannon, individually and as Salt Lake County Attorney, and Michael George, individually and as a Salt Lake County Investigator, Defendants.**

No. 89–C–676J.

United States District Court,
D. Utah, C.D.

May 10, 1991.

Kent B. Linebaugh and James L. Thompson, Jardine, Linebaugh, Brown & Dunn, Salt Lake City, Utah, for plaintiff.

David K. Watkiss, Watkiss & Saperstein; Kevin W. Bates; K. Isom, Patricia J. Marlowe and Donald Sawaya, Salt Lake City, Utah, for defendants.

## OPINION AND ORDER

JENKINS, Chief Judge.

## I.  INTRODUCTION

On January 29, 1991, the court heard argument on a Motion to Dismiss filed by defendant Salt Lake County (the "County"). The County argued that plaintiff's 42 U.S.C. § 1983 (1981) claims were barred by the applicable statute of limitations. On May 2, the court heard argument on a second Motion to Dismiss filed by defendant Michael George ("George"). George joined the County's Motion to Dismiss, similarly arguing that plaintiff's § 1983 claims were time barred. The court took the Motions under advisement. Having since carefully considered the memoranda and arguments of counsel, and for the reasons set forth below, the court hereby DENIES defendants' Motions to Dismiss.

1.  Utah Code Ann. § 78–12–28(3) provides that an action "for injury to the personal rights of another as a civil rights suit under 42 U.S.C. 1983" must be filed within two years.

2.  Some states have a "general" statute of limitations provision which applies to all personal injury actions with certain specific exceptions. Other states have a "residual" provision which applies to all actions not otherwise provided for, including personal injury actions. *See e.g.,* U.C.A. § 78–12–25(2) (An action for relief not otherwise provided for by law must be brought within four years.)

## II.  FACTS

In August of 1988, defendant Simon and Schuster published a book entitled "A Gathering of Saints" (the "book"). The book, which was written by defendant Robert Lindsey ("Lindsey"), contained portions of a diary written by plaintiff's deceased wife. On July 31, 1989, plaintiff filed the above captioned case claiming defendants Simon and Schuster and Lindsey had unreasonably invaded plaintiff's privacy by publishing portions of the diary. On December 5, 1990, over two years after the book was published, plaintiff filed an Amended Complaint naming the County and George (collectively "defendants") as additional defendants to this action. Plaintiff's claims against defendants likewise arise out of the August, 1988, publication of the book.

This case is currently before the court on defendants' Motions to Dismiss plaintiff's § 1983 claims against them. Defendants argue that such claims are barred by the two-year statute of limitations found in Utah Code Ann. ("U.C.A.") § 78–12–28(3) (1987).[1] In contrast, plaintiff contends that the four-year residual statute of limitations found in U.C.A. § 78–12–25(2) (1987) applies to § 1983 actions filed in the State of Utah, and therefore his civil rights claims against defendants were timely.[2]

## III.  DISCUSSION

This court must select which state statute of limitations provision governs § 1983 actions filed in federal court in the State of Utah.[3] Section 1983 itself does not contain a specific statute of limitations. Therefore, because Congress has not established a

3.  Section 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

time period in which a cause of action may be brought under § 1983, the settled practice is to adopt a local provision as federal law. *See Board of Regents v. Tomanio,* 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980).

In 42 U.S.C. § 1988 (1981), Congress specifically endorsed the borrowing of state-law limitations for purposes of civil rights actions when federal law is deficient. A state statute will only be adopted, however, if it "is not inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988.[4] Because § 1988 does not offer any guidance as to which state provision to borrow, the U.S. Supreme Court has directed courts to select the state statute of limitations "most analogous", *Board of Regents,* 446 U.S. at 488, 100 S.Ct. at 1797, and "most appropriate", *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975), to the particular § 1983 action. Federal courts are bound by a state's construction of its own statute of limitations, but it is a question of federal law whether a particular state statute is applicable to a federal claim. *See Wilson v. Garcia,* 471 U.S. 261, 269–71, 105 S.Ct. 1938, 1943–44, 85 L.Ed.2d 254 (1985).

The first step in selecting a state statute of limitations for purposes of a federal claim, is to characterize the essential nature of the federal action. *See Wilson,* 471 U.S. at 268, 105 S.Ct. at 1942. Once a federal action has been characterized, an appropriate state-law analogy may be drawn. The practice of seeking state-law analogies for particular § 1983 claims has bred confusion and inconsistency in the lower courts, and generated time-consuming litigation. *See Owens v. Okure,* 488 U.S. 235, 240, 109 S.Ct. 573, 576, 102 L.Ed.2d 594 (1989). Some courts have found state-law analogies to § 1983 claims in common-law tort, others in contract law, and still others in statutory law.[5] *Id.* at 241, 109 S.Ct. at 577. Because the choice of the statute of limitations depended upon the characterization of the § 1983 action, two or more state limitation provisions could arguably apply to a given claim.

In *Wilson,* 471 U.S. at 261, 105 S.Ct. at 1938, the Supreme Court sought to end the confusion over which state-law analogy most appropriately characterized the essential nature of a § 1983 claim. The Court held that the legislative history of § 1983 and the wide array of claims embraced by that provision confers a general remedy for "injuries to personal rights". *Wilson,* 471 U.S. at 280, 105 S.Ct. at 1949. Therefore, because § 1983 claims are best characterized as personal injury actions, the Court held that a state's personal injury statute of limitations should be applied to *all* § 1983 actions. *Id.*

In states with a single statute of limitations for personal injury claims, *Wilson* eliminated the confusion over which limitations provision a court should borrow for purposes of § 1983. Questions continued to arise, however, in states with multiple personal injury limitations provisions. Ac-

---

**4.** Section 1988 provides in pertinent part:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of Title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States....
42 U.S.C. § 1988.

**5.** Almost every § 1983 claim can be favorably analogized to more than one common-law form of action. To name a few, § 1983 has been alleged to encompass: "discrimination in public employment on the basis of race or the exercise of First Amendment rights, discharge or demotion without procedural due process, mistreatment of schoolchildren, deliberate indifference to the medical needs of prison inmates, the seizure of chattels without advance notice or sufficient opportunity to be heard...." *Wilson,* 471 U.S. at 273, 105 S.Ct. at 1945 (Footnotes omitted.)

cordingly, in *Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573, 581–82, the Court supplemented *Wilson*,[6] and held that in states with multiple limitations periods for personal injury actions, federal courts should borrow a state's general or residual statute of limitations. *Id.* Because a general or residual statute of limitations is easily identifiable by language or application, the Court noted that a party to a § 1983 action could readily ascertain the applicable limitations period. *Id.* at 248–49, 109 S.Ct. at 580–81.

The Utah legislature has enacted multiple statutes of limitations governing personal injury actions. *See e.g.,* U.C.A. § 78–12–28(2) (1987) (two years for death caused by wrongful act or neglect); U.C.A. § 78–12–29(4) (Supp.1988) (one year for libel, slander, assault, battery, false imprisonment, or seduction). Plaintiffs therefore assert that, because Utah has more than one limitations provision governing personal injury claims, the court should apply the state's residual statute of limitations. The court agrees. To avoid confusion as to which personal injury statute of limitations applies to a § 1983 action filed in Utah, the four-year limitations provision found in U.C.A. § 78–12–25(2) should govern *all* § 1983 actions. Accordingly, the court finds that plaintiff's Amended Complaint, filed on December 5, 1990, naming the County and George as defendants to an action which arose in August of 1988, came well within the four-year statute of limitations found in U.C.A. § 78–12–25(2).

While *Owens* would seem dispositive of the question as to which state statute of limitations applies to § 1983 actions, the Utah legislature has created additional confusion by enacting a § 1983 statute of limitations provision which specifically address-es civil rights claims. Utah Code Ann. § 78–12–28(3) provides that an action "for injury to the personal rights of another as a civil rights suit under 42 U.S.C. 1983" must be filed within two years. Defendants contend that because U.C.A. § 78–12–28(3) specifically addresses § 1983 claims, *Owens* is inapposite to the case at bar. They argue that because U.C.A. § 78–12–28(3) eliminates the confusion over which of Utah's personal injury limitations provisions applies to § 1983 actions, this court need not content itself with Utah's residual statute of limitations.

The court begins its analysis of U.C.A. § 78–12–28(3) by first noting that the applicability of this provision to § 1983 actions filed in federal court in the State of Utah is one of first impression. As discussed above, Congress failed to provide a statute of limitations for suits brought under § 1983. Therefore, the court must borrow the Utah State statute of limitations provision most analogous and most appropriate to plaintiff's § 1983 action, so long as the chosen limitations period is not inconsistent with federal law and policy. 42 U.S.C. § 1988.

The requirement that a state statute be both analogous and appropriate, as well as consistent with federal law and policy, emphasizes the predominance of the federal interest in the borrowing process, taken as a whole.[7] *See Wilson,* 471 U.S. at 269, 105 S.Ct. at 1943. In *Occidental Life Ins. Co. of California,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), the Court stated the reasons for carefully scrutinizing the borrowed state statute. Because "State legislatures do not devise their limitations periods with national interests in mind," the Court noted that "it is the duty of the federal courts to assure that the impor-

---

6. The Court's decision in *Owens* was intended to eliminate any confusion unaddressed by *Wilson.* "Our decision in *Wilson* promised an end to the confusion over what statute of limitations to apply to § 1983 actions; with today's decision, we hope to fulfill *Wilson's* promise." *Owens,* 488 U.S. at 251, 109 S.Ct. at 582.

7. In *Wilson,* the Court noted that:
   The importance of the policies and purposes of the States on matters of civil rights is not the primary office of the borrowing provision in § 1988; rather, the statute is designed to assure that neutral rules of decision will be available to enforce the civil right actions, among them § 1983. Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action.
   *Wilson,* 471 U.S. at 269, 105 S.Ct. at 1943.

tance of state law will not frustrate or interfere with the implementation of national policies." *Occidental Life*, 432 U.S. at 367, 97 S.Ct. at 2455.

Section 1983 provides a federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation. *See Wilson*, 471 U.S. at 271–72, 105 S.Ct. at 1944. The purposes of § 1983 are several fold: to override certain kinds of state laws; to provide a remedy where state law is inadequate; to provide a federal remedy where the state remedy, though adequate in theory, was not available in practice; and to provide a remedy in the federal courts supplementary to any remedy any state might have.[8] *See McNeese v. Board of Education*, 373 U.S. 668, 672, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 (1963). In sum, § 1983 provides the means to preserve and enforce the Constitutional rights, privileges and immunities granted to each citizen. The high purposes of this unique remedy make it appropriate to accord the statute a sweep as broad as its language. *See Wilson*, 471 U.S. at 272, 105 S.Ct. at 1944.

Utah Code Ann. § 78–12–28(3) purports to impose a specific time limitation on all § 1983 claims. In other words, the State of Utah has specifically dictated the time frame in which a federal claimant may vindicate a Constitutional deprivation by persons acting under color of state law. For the reasons set forth below, the court finds that U.C.A. is neither consistent with, nor analogous to, federal law and policy.

Although the federal courts are bound by a state's construction of its own statute of limitations, it is a question of federal law whether a particular state statute is applicable to a federal claim. The power of selecting the most analogous statute of repose from existing state statutes is a federal choice; not a state choice. State statutes of repose relate to state created or state recognized causes of action. A state is within its sphere of power in our federal system of government, as a matter of state policy, when it limits the time within which a state cause of action may be vindicated in state court. In contrast, a federally recognized or federally created cause of action cannot be foreshortened by specific state legislation.[9]

▮ The concept is simple. The issue before the court concerns the fundamental principle of federalism; namely the geographic division of power. A state lacks the power to truncate federally created or federally recognized rights. The principles of federalism is the perennial message of both the Constitution and the Civil Rights Act. Whether to diminish a federally created right is simply not a choice for a state to make. By passing U.C.A. § 78–12–28(3), the State of Utah seeks to make a choice that is clearly outside the realm of their Constitutionally created powers. Determining the statute of limitations for a federally created cause of action, the court emphasizes, is exclusively a federal choice.

Confusion arises because Congress has not itself made a specific choice as a § 1983 statute of repose. Accordingly, both the higher courts and Congress mandate that this court choose the most analogous state statute to the federal action, as long as the state law is not inconsistent with federal law and policy. The court finds that U.C.A. § 78–12–28(3) is *not* the most analogous state statute to a § 1983 action. The Utah statute does not even purport to deal with similar state created or recognized state causes of action. By its express language, the provision deals solely with § 1983 civil rights actions. Further, because U.C.A. § 78–12–28(3) impermissible

---

**8.** The genesis of the Civil Rights Act of 1871 was the campaign of violence and deception in the South fueled by the Ku Klux Klan. The debates on the Act chronicle the insecurity of life, liberty, and property in the Southern States: "Immunity is given to crime, and the records of public tribunals are searched in vain for any evidence of effective redress." *Wilson*, 471 U.S. at 276, 105 S.Ct. at 1947.

**9.** The court is particularly mindful of the policies underlying federalism in the context of § 1983. When the fundamental goal of a federal remedy is to deter future abuses of those acting under color of state law, it is hardly appropriate to permit a state itself to limit the time period in which a claim may be brought against a person acting under color of state law.

intrudes into the federal sphere, the court also find that the provision is inconsistent with federal law and policy.

As set forth in *Owens*, the court finds that the most analogous statute of limitations with respect to § 1983, is the residual statute of limitations found in U.C.A. § 78–12–25(2). The residual statute of limitations is broad, not selective, and thus may legitimately be used as a guide for a federal choice.[10] Therefore, for the reasons set forth herein, to apply U.C.A. § 78–12–25(2) to plaintiff's § 1983 claims is the federal choice this court makes.

Defendants' Motions to Dismiss must therefore be DENIED.

IT IS SO ORDERED.

---

**10.** The court is troubled by a state law enacted for the sole purpose of limiting the time period in which a § 1983 claim may be brought. Such a statute may well be motivated by a legislative desire to limit the liability of persons acting under color of state law. In contrast, the court believes that the enactment of a state general or residual statute of limitations is not likely to be motivated by a legislative desire to limit the liability of its officers or employees.