Louis F. ARNOLD, Plaintiff–Appellant,

v.

DUCHESNE COUNTY, Merv Taylor, Jerry Foote, and Clair Poulson, Defendants–Appellees.

No. 93–4046.

United States Court of Appeals, Tenth Circuit.

May 27, 1994.

John D. Russell, Salt Lake City, UT, for appellant.

Brent A. Burnett, Asst. Atty. Gen. (Jan Graham, Utah Atty. Gen., Lynn J. Lund and Blake Nakamura, with him on the briefs), Salt Lake City, UT, for appellees.

Before ANDERSON and McWILLIAMS, Circuit Judges, and SHADUR,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

This case presents a single issue: whether the appropriate statute of limitations for 42 U.S.C. § 1983 actions in Utah is two years pursuant to Utah Code Ann. § 78–12–28(3) or four years pursuant to Utah Code Ann. § 78–12–25(3). This issue has divided federal district court judges in the district of Utah.[1] The lower court in this case held that section 78–12–28(3) applies to section 1983. We hold that it does not.

## BACKGROUND

Plaintiff and appellant Louis F. Arnold was arrested by officers of the Duchesne County Sheriff's Department on April 21, 1988, and charged with selling a stolen firearm. The charges were subsequently dismissed, and Arnold brought this action on April 17, 1992, against Duchesne County, Sheriff Clair Poulson and officers Merv Taylor and Jerry Foote, asserting claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, as well as numerous state law claims. Defendants filed a motion to dismiss, arguing that Arnold's action is barred by Utah's two-year statute of limitations applicable specifically to section 1983 actions.[2] The district court dismissed all of Arnold's claims, holding, with respect to his section 1983 claim, that section 78–12–28(3)'s two-year limitations period barred the claim. Arnold appeals only that ruling.

## DISCUSSION

Congress provided no specific statute of limitations for actions under the Civil Rights

---

* The Honorable Milton I. Shadur, Senior District Judge, United States District Court for the Northern District of Illinois, sitting by designation.

1. *Compare Adamson v. City of Provo*, 819 F.Supp. 934 (D.Utah 1993) (Anderson, J.) (Utah's residual four-year statute of limitations applies to § 1983 actions, not § 78–12–28(3)) *and Sheets v. Lindsey*, 783 F.Supp. 577 (D.Utah 1991) (Jenkins, C.J.) (same) *with Arnold v. Duchesne County*, 810 F.Supp. 1239 (D.Utah 1993) (Benson, J.) (§ 78–12–28(3) applied to bar § 1983 action) *and Tarlip v. Buckner*, No. 92–C–621–W, 1993 WL 723501 (D.Utah May 26, 1993) (Winder, C.J.) (adopting report and recommendation following *Arnold* and applying § 78–12–28(3)), *aff'd*, 17 F.3d 1437 (10th Cir.1994) *and Schoolcraft v. Utah*, No. 92–C–114–G (D.Utah May 24, 1993) (Greene, J.) (holding without explanation that § 78–12–28(3) barred plaintiff's § 1983 claim), *aff'd on other grounds*, 16 F.3d 417 (10th Cir.1994) *and Thompson v. Rasmussen*, No. 91–C–1039–S, 1993 WL 723845 (D.Utah May 5, 1993) (Sam, J.) (adopting report and recommendation following *Arnold* and applying § 78–12–28(3)).

2. Defendants also claimed that Arnold had failed to state a claim for relief under 42 U.S.C. § 1985.

Acts. 42 U.S.C. § 1988 endorses for the Civil Rights Acts the "settled practice" of adopting a state limitations period when the federal statute provides no such period, provided the state limitations period is not inconsistent with federal law or policy. *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985); *see also Owens v. Okure,* 488 U.S. 235, 239, 109 S.Ct. 573, 576, 102 L.Ed.2d 594 (1989).[3] As the Supreme Court has acknowledged, section 1988 mandates a three-step procedure for selecting such a state limitations period:

> First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum state. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States."

*Burnett v. Grattan,* 468 U.S. 42, 47–48, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984) (citations omitted) (quoting 42 U.S.C. § 1988); *accord Wilson,* 471 U.S. at 267, 105 S.Ct. at 1942. Since section 1983 indisputably contains no statute of limitations, we must consider whether Utah's two-year statute of limitations enacted specifically for section 1983 actions comports with the second and third steps of the *Burnett* methodology.[4]

While section 1988 directs us to borrow state limitations periods, it provides no guidance on how to select the appropriate one. Accordingly, the Supreme Court has told us to select the "most analogous" or "most appropriate" statute of limitations. *Board of Regents v. Tomanio,* 446 U.S. 478, 485, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). It must, of course, be "consistent with federal law and policy." *Owens,* 488 U.S. at 239, 109 S.Ct. at 576.

*Wilson* dictates a three-part analysis to determine which state statute is most appropriate or analogous:

> We must first consider whether state law or federal law governs the characterization of a § 1983 claim for statute of limitations purposes. If federal law applies, we must next decide whether all § 1983 claims should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case. Finally, we must characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle.

*Wilson,* 471 U.S. at 268, 105 S.Ct. at 1942.

Having answered the first question affirmatively—"the characterization of § 1983 [is] to be measured by federal rather than state standards"—the *Wilson* Court concluded that section 1988 directs the selection for each state of "the one most appropriate stat-

---

**3.** Section 1988 provides in part:
   The jurisdiction [over Civil Rights Act cases] ... shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause....
   42 U.S.C. § 1988(a).

**4.** As the Supreme Court in *Burnett* acknowledged, "the second and third steps of the § 1988 inquiry shade into each other" in many cases, because a state statute of limitations motivated by "particular state concerns [that] are inconsistent with, or of marginal relevance to, the policies informing the Civil Rights Acts" may be "inappropriate for civil rights claims." *Burnett,* 468 U.S. at 53 & n. 15, 104 S.Ct. at 2931 & n. 15. However, the third step of the *Burnett* inquiry—whether the state law is inconsistent with federal law or the Constitution—"must be made, for example, when a state legislature has enacted a statute of limitations specifically applicable to actions brought under one or all" of the Civil Rights Acts. *Id.* at 53 n. 15, 104 S.Ct. at 2931 n. 15.

ute of limitations for all § 1983 claims." *Id.* at 270, 275, 105 S.Ct. at 1943, 1946. Finally, the Court held that the most appropriate limitations period is the one applicable to tort actions for personal injuries: it "is supported by the nature of the § 1983 remedy, and by the federal interest in ensuring that the borrowed period of limitations not discriminate against the federal civil rights remedy." *Id.* at 276, 105 S.Ct. at 1947.

*Wilson* did not, however, completely eliminate confusion surrounding the appropriate limitations period for section 1983 actions. It failed to explain how to select a statute when a state has multiple statutes of limitations applicable to personal injury actions. The Court resolved this problem in *Owens*, in which it held that in states having multiple personal injury statutes of limitations, "courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens*, 488 U.S. at 249–50, 109 S.Ct. at 581–82. The *Owens* Court's admittedly "practical inquiry" fashioned a rule to be "applied with ease and predictability in all 50 States." *Id.* at 242–43, 109 S.Ct. at 577–78. *Owens* therefore implicitly endorsed, for section 1983 actions in

Utah, this court's earlier selection of Utah's four-year residual statute of limitations applicable to actions "for relief not otherwise provided for by law." *See Mismash v. Murray City*, 730 F.2d 1366 (10th Cir.1984) (citing Utah Code Ann. § 78–12–25(3)), *cert. denied*, 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985). Accordingly, prior to the enactment of the specific statute at issue in this case, section 1983 actions in Utah were governed by a four-year statute of limitations.

In 1987, the Utah legislature enacted section 78–12–28(3), which provides a two-year period in which to bring an action "for injury to the personal rights of another as a civil rights suit under 42 U.S.C. 1983." Utah Code Ann. § 78–12–28(3). It is the only statute in the country that provides an explicit limitations period for section 1983 actions.[5]

Assuming that section 78–12–28(3) is the "most analogous" state limitations period for a section 1983 action in Utah, we must consider whether it provides "the most appropriate limiting principle," *Wilson*, 471 U.S. at 268, 105 S.Ct. at 1942, and is consistent with federal law and policy.[6] *See Burnett*, 468

**5.** A few states have enacted statutes applicable to all federal actions for which there is no limitations period. *See* Colo.Rev.Stat. § 13–80–102(1)(g); Haw.Rev.Stat. § 657–11. North Carolina and North Dakota apply a specific statute of limitations to all statutory causes of action, whether state or federal, that have no limitations period. N.C.Gen.Stat. § 1–52(2); N.D.Cent. Code § 28–01–16(2). Tennessee has a statute of limitations applicable to all federal civil rights actions. Tenn.Code Ann. § 28–3–104(a)(3). The Tennessee statute has been applied by federal courts. *See, e.g., Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1984). A federal district court has applied the Colorado statute to civil rights actions. *See Merrigan v. Affiliated Bankshares, Inc.*, 775 F.Supp. 1408, 1411–12 (D.Colo.1991), *aff'd on other grounds*, 956 F.2d 278 (10th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 76, 121 L.Ed.2d 40 (1992). However, this court has held that Colorado's residual statute of limitations applies to § 1983 actions, without considering whether § 13–80–102(1)(g) applies. *Blake v. Dickason*, 997 F.2d 749 (10th Cir.1993); *see also Arvia v. Black*, 722 F.Supp. 644 (D.Colo.1989). Virginia had a statute providing a one-year limitations period for § 1983 actions, which the legislature repealed after four years. The Fourth Circuit held the one-year statute inapplicable to a § 1983 action, on the ground that it "disregard[ed] the constitutional values to be protected by [§ 1983] actions" and "unreasonabl[y] discri-

minat[ed]" against those actions. *Johnson v. Davis*, 582 F.2d 1316, 1317 (4th Cir.1978). Oregon had a statute which specifically referred to § 1983 actions, and the Ninth Circuit held it applied to such actions. *See Nored v. Blehm*, 743 F.2d 1386 (9th Cir.1984) (per curiam). The reference to § 1983 has since been removed from the statute. *See* Or.Rev.Stat. § 30.265(1).

**6.** Supreme Court decisions have directed us to consider the "most appropriate" or "most analogous" state limitations period. Those decisions, however, never had to address the situation here—where the state legislature had enacted a limitations period specifically for § 1983 actions. Thus, a search for the most "analogous" or "appropriate" statute was necessary. Here, by contrast, § 78–12–28(3) is arguably the most "analogous" because it specifically addresses § 1983 actions, but it may not necessarily be the most appropriate, in the sense of providing the "most appropriate limiting principle." *Wilson*, 471 U.S. at 268, 105 S.Ct. at 1942. As the Supreme Court has stated, "[a] state law is not 'appropriate' if it fails to take into account practicalities that are involved in litigating federal civil rights claims and policies that are analogous to the goals of the Civil Rights Acts." *Burnett*, 468 U.S. at 50, 104 S.Ct. at 2929.

U.S. at 53 n. 15, 104 S.Ct. at 2931 n. 15; *cf.* *Felder v. Casey,* 487 U.S. 131, 138, 108 S.Ct. 2302, 2306, 101 L.Ed.2d 123 (1988) ("[a]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.") (quoting *Free v. Bland,* 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962)). If it fails to provide the appropriate limiting principle and if it is inconsistent with federal law and policy, it fails the second and third steps of the *Burnett*/section 1988 test, and is therefore inapplicable to section 1983 actions.

To determine whether a state provision is inconsistent with the relevant federal law— section 1983—we initially review the purpose and policy behind that law. This is necessary because "[a]ny assessment of the applicability of a state law to federal civil rights litigation ... must be made in light of the purpose and nature of the federal right." *Felder,* 487 U.S. at 139, 108 S.Ct. at 2307. The primary objective of the Civil Rights Acts has been stated numerous times: "to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief." *Id.* (quoting *Burnett,* 468 U.S. at 55, 104 S.Ct. at 2932). This "uniquely federal remedy" is to be given "a sweep as broad as its language." *Id.* (quoting *Mitchum v. Foster,* 407 U.S. 225, 239, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972), and *United States v. Price,* 383 U.S. 787, 801, 86 S.Ct..1152, 1160, 16 L.Ed.2d 267 (1966)). While state courts have concurrent jurisdiction over section 1983 actions, *id.,* the section 1983 remedy is supplementary to any state remedy and "can have no precise counterpart in state law." *Wilson,* 471 U.S. at 272, 105 S.Ct. at 1944.

We now consider whether section 78–12–28(3) conflicts with or undermines that policy. We must first determine the section's scope and we hold that section 78–12–28(3), by its terms, specifically and exclusively targets section 1983 actions. Defendants endeavor to avoid some of the difficulties inherent in such a conclusion by arguing that the section would also apply to all other civil

rights actions filed in Utah.[7] We reject those arguments that section 78–12–28(3) was intended to do anything other than apply exclusively to section 1983 actions. The language of the statute could not be clearer, and we read that clear language in its ordinary way. *See Deal v. United States,* —— U.S. ——, ——, 113 S.Ct. 1993, 1998, 124 L.Ed.2d 44 (1993). We are unwilling to "assume that [the legislature] chose a surprisingly indirect route to convey an important and easily expressed message" concerning the reach of the statute. *Landgraf v. USI Film Prods.,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

■ We now turn to whether such a statute specifically targeting section 1983 actions provides an appropriate limiting principle and is consistent with the "purpose and nature" of section 1983. We hold it is not and it therefore cannot be applied to section 1983 actions in Utah.

■ The characterization of the essential nature of a section 1983 action is a question of federal law. This is because its characterization for statute of limitations purposes is "derived from the elements of the cause of action" and from "Congress' purpose" in enacting it. *Wilson,* 471 U.S. at 268, 105 S.Ct. at 1942. "Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." *Id.* at 269, 105 S.Ct. at 1943. The Court in *Wilson* held that, based on the "nature of the § 1983 remedy" and the historical context in which it was enacted, the Congress enacting the Civil Rights Acts in 1871 would today characterize section 1983 "as conferring a general remedy for injuries to personal rights." *Id.* at 276, 278, 105 S.Ct. at 1947, 1948.

Additionally, and significantly, the *Wilson* Court also held that that characterization is supported "by the federal interest in ensuring that the borrowed period of limitations not discriminate against the federal civil rights remedy." *Id.* at 276, 105 S.Ct. at 1947. This is so because:

7. As the lower courts in this and in another case have acknowledged, an equal protection issue could arise if different limitations periods apply

to different sections of the Federal .Civil Rights Acts. *See Adamson,* 819 F.Supp. at 946 n. 14; *Arnold,* 810 F.Supp. at 1245 n. 7.

General personal injury actions, sounding in tort, constitute a major part of the total volume of civil litigation in the state courts today, and probably did so in 1871 when § 1983 was enacted. *It is most unlikely that the period of limitations applicable to such claims ever was, or ever would be, fixed in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect.*

*Id.* at 279, 105 S.Ct. at 1948 (emphasis added) (footnote omitted). Thus, an important ground for the Supreme Court's conclusion that section 1983 actions are properly characterized as personal injury actions was its confidence that such a characterization would "assure that neutral rules of decision" would be available to enforce them. *Id.* at 269, 105 S.Ct. at 1943; *cf. Felder,* 487 U.S. at 141, 108 S.Ct. at 2308 (rejecting application of state notice-of-claim statute in section 1983 actions brought in state court because such a statute is not "a neutral and uniformly applicable rule of procedure" but rather burdens "only ... those who seek redress for injuries resulting from the use or misuse of governmental authority").

By enacting a specific statute of limitations for section 1983 actions alone, the Utah legislature has both usurped the role of federal law in characterizing the essence of such actions and has eliminated the assurance that neutral rules of decision will apply to section 1983 actions in Utah.

The Utah legislature has usurped the role of federal law by substituting its own judgment about the competing policies behind the statute of limitations for section 1983 actions for the more complex federal judgment embodied in the borrowing process sanctioned by section 1988 and amplified by federal common law. Statutes of limitations promote policies of repose. Those policies are balanced, however, against the substantive policies behind the particular cause of action involved. The borrowing of such limitations periods in section 1983 actions "serves these policies of repose." *Wilson,* 471 U.S. at 271,

105 S.Ct. at 1944. But by borrowing a state's limitations period, the federal statute thereby incorporates the state's "judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action." *Id.* That is why it is imperative to borrow the "appropriate" limitations period applicable to an "analogous" state cause of action, and that is why the characterization of section 1983 actions is crucial—it better ensures there will be an acceptable fit between the borrowed limitations period and the policies behind section 1983.

Section 78–12–28(3) circumvents that entire process, and merely reflects the judgment of the Utah legislature as to what the appropriate limitations period for section 1983 actions should be. That is inconsistent with the rule that federal law provides the characterization of section 1983 as a part of determining the appropriate state limitations period to borrow. This circuit has so held. *Garcia v. Wilson,* 731 F.2d 640, 649 (10th Cir.1984) ("[W]e are unwilling to hold that a state's articulation of the limitations period specifically applicable to section 1983 claims is determinative of the federal issue and relieves the federal courts from characterizing a civil rights claims as a matter of federal law."), *aff'd,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). *But see Nored v. Blehm,* 743 F.2d 1386, 1387 (9th Cir.1984) (specific statute of limitations for section 1983 actions in Oregon obviated the need to characterize such actions because "[s]uch characterization serves no purpose other than to provide guidance in the selection of the applicable state statute") (quoting *Kosikowski v. Bourne,* 659 F.2d 105, 107 (9th Cir.1981)).[8]

Nor is section 78–12–28(3) a neutral rule of decision. It specifically, and exclusively, applies to section 1983 actions. The two-year limitations period applies "to those who seek redress for injuries resulting from the use or misuse of governmental authority." *Felder,*

---

8. Defendants cite *Kosikowski* in particular in support of their argument that we should accept § 78–12–28(3) so long as there is no inconsistency with the remedial objectives of § 1983. *Kosikowski* pre-dated *Wilson* with its extensive discussion of the importance of the characterization of section 1983 claims as a matter of federal law and the importance of ensuring that neutral rules of decision apply to § 1983 actions.

487 U.S. at 141, 108 S.Ct. at 2308. Civil rights actions brought in Utah under other sections of the Civil Rights Acts are arguably still covered by the residual four-year statute held applicable by *Mismash.* Others suffering personal injuries from residual categories of state law torts (the jurisprudential equals to section 1983 plaintiffs under *Owens*) similarly enjoy a four-year limitations period. Section 1983 personal injury plaintiffs (i.e., those suffering personal injuries inflicted by someone acting under color of law) *alone* have been singled out for application of a two-year limitations period.

The lower court found some support for the application of section 78–12–28(3) to Arnold's section 1983 action in the fact that Utah also provides a two-year limitations period for actions against state officers "upon a liability incurred by the doing of an act in [their] official capacity, and in virtue of [their] office, or by the omission of an official duty." Utah Code Ann. § 78–12–28(1). The existence of the same limitations period for a similar state cause of action against state officials is irrelevant to our consideration of the validity of section 78–12–28(3). As the *Wilson* Court acknowledged, "we are satisfied that Congress would not have characterized § 1983 as providing a cause of action analogous to state remedies for wrongs committed by public officials." *Wilson,* 471 U.S. at 279, 105 S.Ct. at 1948. It is " 'the purest coincidence' when state statutes ... provide for equivalent remedies; any analogies to those causes of action are bound to be imperfect." *Id.* at 272, 105 S.Ct. at 1944 (quoting *Monroe v. Pape,* 365 U.S. 167, 196 n. 5, 81 S.Ct. 473, 488, n. 5, 5 L.Ed.2d 492 (1961) (Harlan, J., concurring)); *see also Owens,* 488 U.S. at 248, 109 S.Ct. at 580.

Indeed, in disallowing the borrowing of a six-month Maryland administrative limitations period for a section 1983 action, the Supreme Court in *Burnett* specifically rejected the defendants' argument that there was a compelling need to quickly resolve public employee disputes, and that similar state causes of action were also confined to a six-month period:

> That policy, keyed to a classification of plaintiffs, cannot pre-empt the broadly remedial purposes of the Civil Rights Acts, which make no distinction among persons who may look to the court to vindicate their federal constitutional rights.

*Burnett,* 468 U.S. at 54, 104 S.Ct. at 2931. Thus, it is immaterial that an arguably analogous, but not identical, state law cause of action enjoys the same limitations period. What matters is whether a neutral rule of decision, consistent with the characterization of section 1983 actions as providing redress for personal injuries, applies to section 1983 actions brought in Utah. Section 78–12–28(3) fails to achieve that result.

The legislative history of section 78–12–28(3) also suggests that its purpose is inconsistent with the purpose of section 1983. Initially, the bill introducing section 78–12–28(3) provided a two-year limitations period for actions "for personal injury, or injury to the personal rights of another." Such a statute would arguably be an appropriate response to *Wilson* and would eliminate any confusion in Utah as to the proper limitations period for section 1983 actions. And yet it would be a "neutral rule of decision," applicable to all personal injury actions.

Prior to its enactment, however, the section was changed to specifically and exclusively apply to section 1983 actions. Section 78–12–28(3) was at least partially motivated by the "proliferation" of section 1983 lawsuits, "especially in our prisons." Floor Debate, 47th Utah Leg., Gen.Sess. (Jan. 16, 1987) (statements of Sen. Lyle Hillyard) (Senate Recording No. 1, Side 1). This remark certainly suggests that the purpose of the section was simply to reduce the number of such lawsuits, a purpose which would clearly contradict section 1983's broad remedial objectives.[9] No other rationale for sec-

---

**9.** The *Burnett* Court made it clear that such a purpose is impermissible. In that case, the defendants argued that the policy of protecting public officers "from the seemingly endless stream of unfounded, and often stale, lawsuits brought against them" justified the application of a six-month limitations period to § 1983 actions. *Burnett,* 468 U.S. at 54, 104 S.Ct. at 2931. The Court held "[t]hat policy is manifestly inconsistent with the central objective of the Reconstruction–Era civil rights statutes." *Id.* at 55, 104 S.Ct. at 2932.

tion 78–12–28(3) was given, other than the need to provide certainty in the post-*Wilson* but pre-*Owens* time period when there was still genuine confusion as to which personal injury statute of limitations applied to section 1983 actions. Yet that permissible purpose could be achieved by means of a neutral rule of decision. It need not be achieved by a rule that *only* applies to section 1983 actions. While the legislative history behind section 78–12–28(3) is admittedly sparse, it supports our view that the policies and purpose behind the section are inconsistent with section 1983.

In sum, section 78–12–28(3) attempts to do that which it cannot—to unilaterally declare that the statute of limitations for section 1983 actions in Utah shall be two years. While Congress permits federal courts to borrow state limitations periods, neither Congress nor the Supreme Court has authorized states to create limitations periods specifically and exclusively applicable to section 1983 actions. We accordingly REVERSE the district court decision in this case and REMAND for further proceedings.