Sylvester **ALEXANDER**, Plaintiff,

v.

**PRECISION MACHINING, INC., Defendant.**

No. 97–1178–JTM.

United States District Court, D. Kansas.

Dec. 31, 1997.

William L. Fry, William Fry & Associates, Wichita, KS, for Plaintiff.

Ross A. Hollander, Kasey A. Rogg, Martin, Churchill, Blair, Hill, Cole & Hollander, Chtd., Wichita, KS, for Defendant.

### MEMORANDUM ORDER

MARTEN, District Judge.

Sylvester Alexander sued Precision Machining, Inc., alleging racial discrimination in violation of 42 U.S.C. § 1981, and disparate treatment, a racially hostile work environment and retaliatory discharge in violation of Title VII, 42 U.S.C. § 2000e *et seq.* Precision moves to dismiss the Title VII hostile work environment and retaliatory discharge claims for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). Precision also seeks to dismiss all claims except the Title VII discriminatory treatment claim for failure to state a claim on which relief may be granted under Fed.R.Civ.P. 12(b)(6).

I. Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1).

Precision argues Alexander's Title VII retaliation and hostile work environment claims are barred under Rule 12(b)(1) because the court lacks subject matter jurisdiction over the claims. This argument is based

on Alexander's alleged failure to exhaust his administrative remedies before bringing this action. The case which Precision relies upon for this assertion, *Jones v. Runyon*, 91 F.3d 1398 (10th Cir.1996), indicates that dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is inappropriate under the facts of this case. *Id.*, at 1399 n. 1.

Here, Precision argues Alexander's amended Equal Employment Opportunity Commission (EEOC) complaint was untimely.[1] Precision does not argue that Alexander never raised his claims in an EEOC complaint. *Jones* distinguished claims which were not raised in an EEOC complaint from claims where it was alleged that the EEOC complaint raising the claims was untimely. The former are subject to dismissal for lack of subject matter jurisdiction; the latter are not. *Id.* Accordingly, Precision's motion to dismiss some of Alexander's Title VII claims for lack of subject matter jurisdiction is denied. Whether Alexander's claims are barred because the amended complaint was untimely is addressed below.

## II. Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6).

Both parties submitted materials beyond the pleadings and the motion will be decided as a motion for summary judgment. *See* Fed .R.Civ.P. 12(b)(6). The standard for deciding summary judgment motions is well established and will not be set forth. Precision does not seek dismissal of Alexander's Title VII disparate treatment claim. Each of Alexander's other claims will be addressed in turn.

## A. Discrimination in Violation of Section 1981.

■ Precision argues Alexander's discrimination claim brought under Section 1981 is time barred because it was not brought within two years of the date Alexander was fired, the last date of any alleged discriminatory conduct. Precision argues that the applicable limitations period for claims brought under Section 1981 is to be borrowed from the state statute of limitations for personal injury actions, in this case K.S.A. 60–513(a)(4).

Alexander argues the applicable statute of limitations is contained in 28 U.S.C. § 1658, which provides a four-year limitations period for all civil remedies arising under Acts of Congress enacted after December 1, 1990. Alexander argues Section 1658 applies because Congress amended 42 U.S.C. § 1981 in 1991 to overrule *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), and permit actions under Section 1981 for wrongful termination of contracts. Alexander's complaint was filed on April 17, 1997, more than two years, but within three years of his discharge.

There is no question that for claims arising prior to passage of the Civil Rights Act of 1991, state law was borrowed to determine the appropriate statute of limitations for actions brought under Section 1981. *See e.g., Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Baker v. Board of Regents of the State of Kansas*, 991 F.2d 628, 630 (10th Cir.1993). *Baker* held that for actions brought under Section 1981 in Kansas, federal courts would borrow the two-year limitation for personal injury actions provided for in K.S.A. 60–513(a)(4). *Baker*, 991 F.2d at 630.

■ After *Baker* was decided, the Kansas Supreme Court held in *Wagher v. Guy's Foods, Inc.*, 256 Kan. 300, 308, 885 P.2d 1197 (1994), that when a cause of action did not exist under the common law but was created by statute, the three-year limitation period of K.S.A. 60–512(2) applied, rather than the two-year period of limitation provided for by K.S.A. 60–513. Specifically, *Wagher* held the three-year limitation of K.S.A. 60–512(2) applied to all claims of discrimination brought under the Kansas Act Against Discrimination, K.S.A. 44–1001 *et seq.* (the "KAAD"), a statutory remedy. The parties do not address the impact of *Wagher*.

In an unpublished, and therefore non-binding, opinion, the Tenth Circuit dismissed *Wagher* as wholly irrelevant to the determination of which Kansas statute of limitations should be borrowed in federal civil rights cases. *Peoples v. Finney County Board of*

---

1. Alexander filed his EEOC complaint and his amended complaint with the Kansas Human

Rights Commission.

*Commissioners*, 56 F.3d 78 (10th Cir.1995) (table) (section 1983). The court does not agree that *Wagher* should be so quickly dismissed as wholly irrelevant.

In *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27, 33 (1995), the Supreme Court directed courts seeking the right state rule to apply when a federal statute fails to specify a limitations period to look to the state statute most closely analogous to "the federal act in need." There is a narrow exception to the rule, applicable when applying the state statute of limitations would stymie the policies underlying the federal cause of action or would otherwise be inconsistent with federal concerns. *See Id.*

The Tenth Circuit has refused to borrow state statutes of limitations where the state was purporting to enact a limitations period applicable only to the federal cause of action. *See e.g., Arnold v. Duchesne County*, 26 F.3d 982, 989 (10th Cir.1994), *cert. denied*, 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 626 (1995). In rejecting Utah's statute of limitations for actions brought under Section 1983, *Arnold* stressed the scope of the statute, noting that it did not apply to all civil rights actions but only to those brought under Section 1983. Such discrimination against federal claims was intolerable. *Id.* at 986–89.

Here, the statute of limitations provided by K.S.A. 60–512(2) applies to all claims based upon a state statute and without a common law counterpart, including all claims of discrimination brought under the KAAD. *Wagher*, 256 Kan. at 308, 885 P.2d 1197. Arguably, this is the statute of limitations that should be applied to federal claims of discrimination. *See Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222 (4th Cir.1993) (Federal courts must apply Virginia's statute of limitations applicable to claims brought under Virginia's rehabilitation act to claims brought under the federal rehabilitation act; district court erred in applying personal injury limitations period).

However, uniformity, a competing federal interest, supports the continued use of Kansas' personal injury statute of limitations. The Supreme Court recognized that borrowing state personal injury statutes of limitation in federal civil rights cases would promote uniformity and was unlikely to lead to discrimination against federal claims. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). *Wilson* rejected the suggestion that national uniformity justified rejecting a state's limitation period, but noted that uniformity within a state was important. *Id.* at 275.

If the residual personal injury statute of limitations is used for all civil rights actions, there will be no need to determine whether a particular civil rights claim has a common law counterpart, and thus is not covered by K.S.A. 60–512(2). Thus a uniform limitations period of two years will apply to federal civil rights claims brought in Kansas.

However, this approach runs into the discrimination problem discussed in *Arnold*. Unlike the Utah statute at issue in *Arnold*, the Kansas Supreme Court does not appear to have intended to discriminate against federal claims. Nevertheless, this is the impact of its ruling in *Wagher*. *Compare Wagher* (three-year limitation period for KAAD claims of discrimination) with *Swinehart v. City of Ottawa*, 24 Kan.App.2d 272, 943 P.2d 942 (1997) (Section 1983 claims governed by two-year statute of limitations for personal injury; claim determined to have arisen from statute and not barred by state tort law remedies, but *Wagher* not discussed or applied).

In the absence of any direction from the Tenth Circuit, the interests of uniformity within the State of Kansas prevail. It is unlikely the individual judges of this district would agree on the impact of *Wagher*. *Swinehart* apparently considered *Wagher* irrelevant to federal statutory claims. If *Wagher* is ignored, there is controlling Tenth Circuit precedent for the district courts to follow. *See Baker, supra.* In addition, *Wagher's* application to KAAD claims would rarely result in a claimant being allowed to bring a state action more than two years after the discriminatory act because the KAAD also requires an administrative complaint to be filed within 6 months of the act of discrimination. K.S.A.1996 Supp. 44–1005. However, interestingly enough, that is precisely what happened in *Wagher*.

Accordingly, if the four-year limitation period of Section 1658 does not apply, Alexander's Section 1981 claim is barred by Kansas' two-year statute of limitations for personal injury actions.

Section 1658 provides as follows:

Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

■ Section 1981 was originally enacted in 1870, well before the enactment of Section 1658 on December 1, 1990. However, on November 21, 1991, Section 1981 was amended to provide for a cause of action based on post-contract formation discriminatory conduct. The 1991 amendment was in response to *Patterson's* holding that Section 1981 applied only to discrimination in the formation of contracts. The 1991 amendment has been held not to apply retroactively. *Thomas v. Denny's Inc.,* 111 F.3d 1506, 1508 n. 1 (10th Cir.1997). Thus, Alexander argues his claim of discriminatory discharge is based on an Act of Congress enacted after Section 1658, and the four-year statute of limitations applies. The defendants argue the Civil Rights Act of 1991 was an amendment to an existing Act of Congress, thus Section 1658 does not apply.

The court's research failed to reveal any appellate court decisions addressing this question, even in an analogous context. There are two unpublished district court decisions holding that Section 1658 does not apply to claims brought under the 1991 amendments to Section 1981. *Davis v. California Dept. of Corrections,* 1996 WL 271001 (E.D.Cal.); *Jackson v. Motel 6 Multipurposes, Inc.,* 1997 WL 724429 (M.D.Fla.). *Davis* turns on the phrase "an Act of Congress enacted after [December 1, 1990]," holding that an amendment to a prior act is not an "Act of Congress." *Davis* also notes that applying Section 1658 to claims arising under an amendment to a prior Act of Congress could result in two separate statutes of limitation for Section 1981 claims—one for claims arising under the Act before amendment and one for claims arising under the Act after amendment. *Jackson* need not have decided the issue at all, as the applicable state statute of limitations also was four years.

The court declines to follow *Davis. Davis* requires the court to decide when an Act of Congress is not an Act of Congress. The court will not engage in such semantics. The amendments were not merely technical in nature. When Congress amended Section 1981, it redesignated the existing statute as subsection "a", and substantially changed the meaning of subsection "a" by adding new subsections "b" and "c." The whole statute was enacted on November 21, 1991. Claims arising under Section 1981 after November 21, 1991, would be claims arising under an Act of Congress enacted after Section 1658. Whether such claims also were viable under a previously enacted version of the statute is irrelevant. Claims arising under the previous version of the statute because of the date of the discriminatory act would be subject to the prior "borrowed" statute of limitations. Thus no retroactive application of Section 1658 is involved.

With regard to avoiding confusion, confusion already exists when courts are called upon to apply Section 1981 to claims alleging conduct occurring both before and after the amendment. Courts frequently handle cases which present multiple claims applying different statutes of limitation. Applying Section 1658 to claims arising after the enactment of the 1991 amendment is consistent with the cut-off for applying the amendment itself, and once the transitional cases clear the courts, ensures that a single statute of limitation will apply to all Section 1981 claims nationwide. In the long run, applying Section 1658 results in less, not more, confusion.

Here, Alexander alleges discrimination beginning in July 1993, entirely after the date of enactment of the Civil Rights Act of 1991. Accordingly, Section 1658 applies and the statute of limitations on Alexander's Section 1981 claim is four years. Alexander's Section 1981 claim is not time barred because it was brought within four years of the first of the alleged acts of discrimination.

**B. Racial Harassment and Retaliation in Violation of Title VII.**

Precision argues Alexander's claims of racial harassment in the form of a hostile work

environment and retaliatory discharge were not timely raised in his administrative complaints.

 In a deferral state such as Kansas, a Title VII claimant must file his discrimination charge with the appropriate state or local agency within 300 days of the alleged unlawful act. *Peterson v. City of Wichita,* 888 F.2d 1307, 1308 (10th Cir.1989), *cert. denied,* 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990). When a defendant alleges a complaint was not timely filed, the correct inquiry is whether the purpose of the time limit has been met and whether the investigating agency was put on adequate notice. *Richardson v. Frank,* 975 F.2d 1433, 1436 (10th Cir.1991).

 Timely notice to a defendant is one purpose of the filing requirements, but whether a defendant suffers actual prejudice should be considered before foreclosing a claim on a technicality. *See Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). Technical application of procedural rules is inappropriate in a statutory scheme such as Title VII, in which laymen, unassisted by trained lawyers, initiate the process. *Id.* The procedural requirements of Title VII should not be allowed to become so formidable and inflexible as to preclude the aggrieved employee from receiving relief from employment discrimination. *Richardson,* 975 F.2d at 1436.

 In the Tenth Circuit, when an employee seeks judicial relief for incidents not listed in his original charge, the judicial complaint may encompass any discrimination like or reasonably related to the allegations of the original EEOC charge. *Ingels v. Thiokol Corp.,* 42 F.3d 616, 625 (10th Cir.1994).

 Alexander filed his initial complaint with the KHRC on October 11, 1994. He was unrepresented by counsel. Alexander checked the box on the form indicating his complaint was based on racial discrimination. He failed to check the box indicating a retaliation claim. There is no box for indicating a racial discrimination claim based on a hostile work environment, as distinguished from a discrimination claim based on disparate treatment.

In the body of the complaint, Alexander alleged he was subject to discrimination based on his race, African American. Specifically, he claimed he was given an improper memorandum on March 11, 1994; was reprimanded without reason on April 18, 1994; and was terminated on September 23, 1994 because of his race.

Alexander met with Margaret Good of the KHRC on October 19, 1995, for an initial interview. He complained to Good about a bad racial atmosphere at the plant. He told her that after he complained, things got worse. Alexander told her he received unfounded write-ups, was given bad jobs, and was discharged. He felt the discharge was based on his complaints.

Alexander's complaint was subsequently assigned to William Minner of the KHRC. Minner suggested that Alexander amend his complaint to include a claim of retaliation. On January 9, 1996, Minner indicated in a letter to Alexander that the investigating commissioner had rendered a probable cause finding. The letter indicated conciliatory efforts would begin in the near future. Minner attached a copy of the KHRC case summary.

The case summary indicates the KHRC reviewed the facts supporting Alexander's allegations of a hostile work environment; his allegation that he reported harassment by coworkers to his supervisors; and his allegations that shortly afterward, he received reprimands and was ultimately discharged. The case summary specifically discusses a reprimand Alexander received on July 3, 1993, immediately after he initially complained about harassment.

On March 21, 1996, Alexander filed an amended complaint with the KHRC. The KHRC sent Precision a copy of the amended complaint. Alexander checked the box indicating racial discrimination and the box for retaliation. He alleged he was harassed by a co-worker and that he complained about the harassment. Alexander added a reference to the July 3, 1993 reprimand. Alexander alleged the reprimands and his termination were motivated by his race and were in retaliation for his complaints about harassment by his coworker. The KHRC accepted the amended complaint. Alexander then re-

tained his present counsel. On February 27, 1997, the EEOC issued Alexander a right to sue letter.

There is no question in this case that the investigating agency was put on adequate notice. The KHRC considered the facts supporting Alexander's amended complaint in its case summary and in making its probable cause finding on the original complaint. In fact, the KHRC staff suggested Alexander file the amended complaint.

Precision asserts it suffered prejudice because the amended complaint was filed while conciliation efforts were under way. Precision admits conciliation began after it was provided with the KHRC finding of probable cause. The case history attached to the probable cause finding contains the factual basis for Alexander's amended complaint. At the time, Alexander was still unrepresented by counsel. The court finds Precision suffered no prejudice when the KHRC allowed Alexander to amend his complaint more than 300 days after the last alleged act of discrimination and after conciliation began because Precision was aware of the factual basis for the claims contained in the amended complaint before conciliation began.

The court notes Precision does not allege it was prevented from attempting conciliation after the amended complaint was filed, or that conciliation ended before the amended complaint was filed. Precision only alleges that the amended complaint was filed while conciliation efforts were under way.

Precision argues that for amendments to relate back, they must comply with 29 C.F.R. § 1601.12(b). Precision cites no authority for this proposition and it does not appear to be the law in the Tenth Circuit. *See Ingels, supra.* Even assuming this regulation controls, Precision admits that amendments relate back when the additional acts alleged are related to or grow out of the subject matter of the original charge. This requirement is met where the investigating agency relies on the facts forming the basis for the amended allegations in making a finding of probable cause on the original charges.

Precision cites a number of cases rejecting attempts by plaintiffs to amend an EEOC complaint to assert new claims based on independent facts. Here, Alexander's retalia-

tion claim is based on the same acts and facts on which his original charge was based. Alexander's hostile environment claim is based on facts leading up to the facts alleged in his complaint—the unwarranted reprimands and the dismissal. The claims in Alexander's amended complaint are reasonably related to the claims and facts alleged in his original complaint.

IT IS ACCORDINGLY ORDERED, this 30th day of December, 1997, that Precision's motion to dismiss is denied.